**In re William L. GRIVAS, dba Southwest Assembly Corporation, Southwest Wire and Cable, SGI Service and Repair, SGI, Southwest General Industries and SGI New Hampshire, Debtors.**

**Bankruptcy No. 87–01131–LM11.**

United States Bankruptcy Court,
S.D. California.

Feb. 8, 1991.

See also 105 B.R. 954.

James Hill, Sullivan, Hill, Lewin & Markham, San Diego, Cal., for debtors.

Cheryl A. Geyerman, Deputy County Counsel, County of San Diego, San Diego, Cal., for San Diego County Tax Collector/Assessor.

Lori Partrick, Lillick & McHose, San Diego, Cal., for Sec. Pacific Bank.

## MEMORANDUM DECISION

LOUISE DeCARL MALUGEN,
Bankruptcy Judge.

The matter before this court is the objection of Security Pacific National Bank ("SPNB") to the priority claim under 11 U.S.C. § 507(a)(7)(B) of San Diego County ("the County") for 1984 escaped property taxes. This court has jurisdiction under 28 U.S.C. § 1334, 28 U.S.C. §§ 157(a) and (b), and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceeding in which the court may hear and determine all matters relating to this case in accordance with 28 U.S.C. § 157(b)(2)(K).

## BACKGROUND

Debtor William L. Grivas filed for relief under Chapter 11 on February 17, 1987. The County filed two timely claims for post-petition property taxes with administrative priority.[1] The claims bar date in this case for pre-petition claims was March 31, 1988. However, there is no evidence that the County was served with, or had actual notice of, the claims bar date.

In July, 1988, the County conducted its regular four-year audit of Debtor's personal property. Since the Debtor had not filed a return for 1984, the property had been taxed based on the Assessor's estimation.[2]

---

1. Claim number 735/22 for $794.70 was filed on October 23, 1987. Claim number 736/23 for $17,662.63 was filed on December 22, 1987.

2. Cal.Rev. & Tax.Code § 501 provides that if a person fails to provide required information to the assessor, "[T]he assessor, based upon information in his possession, shall estimate the value of the property and, based upon this estimate, promptly assess the property."

As a result of the audit, on October 6, 1988, the County entered a bill onto the tax roll for escape year 1984–85, at the 1984–85 rate. Consequently, the County submitted proofs of claim for pre-petition "escape tax" for fiscal year 1984.[3] Under California Rev. & Tax.Code § 2922(a), the tax became delinquent on November 30, 1988.[4] A creditor's plan of reorganization/liquidation was confirmed on February 1, 1989. This plan calls for SPNB to pay all allowed claims.

## ISSUES

■ The first question is whether the County's claim for escape property tax relates back to a timely filed claim. Since we find that it does not, we next consider whether this court's powers in equity permit consideration of the claim notwithstanding its late filing. Finally, since we allow the late claim, we must determine whether it is entitled to priority under 11 U.S.C. § 507(a)(7)(B). That question hinges on whether an escape tax is assessed in the fiscal year to which it applies or in the calendar year during which it is entered.[5]

## DISCUSSION

### I. UNTIMELY FILING OF THE PROOF OF CLAIM.

#### A. *The County's Claim For Escaped Tax Does Not Relate Back To A Timely Filed Claim.*

■ The decision to allow an amendment to a timely filed claim is within the sound discretion of the court. *In re AM Int'l., Inc.,* 67 B.R. 79, 81 (N.D.Ill.1986). This circuit follows a "long-established liberal policy toward amendment of proofs of claim." *In re Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1381 (9th Cir.1985); *In re Sambo's Restaurants, Inc.,* 754 F.2d 811, 816 (9th Cir.1985).

■ Amendments are freely allowed for curing defects in the original claim, providing greater detail to a previously-filed claim, or pleading a new theory on previously-filed facts. *In re International Horizons, Inc.,* 751 F.2d 1213, 1216 (11th Cir.1985). However, post bar-date amendments must be scrutinized to avoid approval of a new claim styled as an amendment. *In re Fischer,* 109 B.R. 384, 387 (Bankr.E. D.Mo.1989). The original claim must "give fair notice of the conduct, transaction or occurrence that forms the basis of the claim asserted in the amendment." *In re Westgate–California Corp.,* 621 F.2d 983 (9th Cir.1980). Amendments are allowed "only where the original claim prompted notice to the court of the existence, nature, and amount of the [amended] claim." *In re International Horizons,* 751 F.2d at 1217. An amendment adding a different type of tax to a timely claim generally does not relate back. *See In re International Horizons; In re AM Int'l.,* 67 B.R. at 82. Here, the untimely escape property tax is of the same category as the timely property tax claim.

■ Courts have differed on whether an amendment extending the tax period may relate back to a timely-filed claim. Courts have generally allowed untimely amendments concerning years following the timely-filed period. For instance, an untimely amendment for 1986 taxes related back to

---

**3.** Claim number 835/274, for $2,889.73 in 1984 escape property tax and $9,085.82 in 1987 escape property tax, was filed on October 27, 1988. Amended claim number 839/278, which removed the 1987 escape tax but retained the 1984 tax, was filed on December 21, 1988. Finally, amended claim number 907/341 was filed on July 26, 1989. This claim reflected payments of $1,706.54 on the 1984 escape tax and retained a claim for $2,057.69 in 1984 escaped property taxes.

**4.** Cal.Rev. & Tax.Code § 2922(a) provides in pertinent part, "Taxes added to the unsecured roll after July 31st, in unpaid are delinquent at 5 p.m. on the last day of the month succeeding the month in which the assessment was added to the unsecured roll...."

**5.** The timely filing issue was not briefed by either party. However, SPNB's motion to object to claim 341 is based on the ground that the claim was not timely filed. Accordingly, we address the question.

SPNB's Memorandum of Points & Authorities notes that the County did not seek relief from stay before assessing the tax. That matter is not formally before the court at this time, and is not addressed in this opinion.

a timely-filed claim for 1984–85 taxes. *In re Calisoff,* 94 B.R. 1002 (Bankr.N.D.Ill. 1988). Similarly, where the Chapter 13 plan proposed to pay all taxes in full, the court held that the IRS' timely claim for 1973, 1974 and 1976 taxes gave notice that 1978–80 taxes would be claimed. Accordingly, the amendment related back. *In re Simms,* 40 B.R. 186 (Bankr.N.D.Ga.1984). In contrast, despite the IRS' pre-bar date notice of the deficiency to the debtor, an untimely amendment adding 1981 taxes to a timely 1983 tax claim did not relate back. *United States v. Owens,* 84 B.R. 361 (E.D. Pa.1988).

Here, the County timely filed a claim for 1987 post-petition taxes. This claim stated no facts which would give notice of the existence or amount of a pre-petition claim for 1984 taxes. The County did not style its untimely claim as an amendment. Finally, the County did not refer to the claim as an amendment in its pleadings.

The Bankruptcy Rules provide mechanisms which protect a creditor that has not determined the extent of its claim. *In re Fischer,* 109 B.R. at 389. The County could have noted on its timely filed claim that the amount was uncertain. Under Rule 3003(c)(3), it could have requested an extension of time for the filing of additional claims.[6] The County did not take any of these steps. Accordingly, this court finds that the late-filed claim for 1984 escaped property taxes is not an amendment which relates back to its timely-filed claim.

### B. *Equity Permits A Late–Filed Proof Of Claim.*

In considering whether to allow a late-filed claim under equitable powers, many bankruptcy courts follow the analysis of *In re Miss Glamour Coat, Inc.,* 80–2 U.S. Tax Cas. (CCH) ¶ 9737, 1980 Westlaw 1668 (S.D.N.Y.1980).[7] *Glamour Coat* identifies five factors which would assist in this determination (paraphrased here):

1) Whether Grivas and SPNB relied on the County's original proofs of claim or whether they had reason to know that further proofs of claim would follow;

2) Whether, if this court does not allow this late claim, the other creditors would receive a windfall to which they are not entitled;

3) Whether the County intentionally or negligently delayed in filing the proof of claim for 1984 escape property taxes;

4) The County's justification, if any, for failure to file for time extension under Rule 3003(c)(3); and,

5) Any other considerations which should be taken into account in assuring a just and equitable result.

*Glamour Coat,* 1980 Westlaw 1668 at 5.

Applying these guidelines to the case at bar, this court finds:

1. The original proofs of claim gave no sign there would be additional claims. In fact, the County did not begin the audit until after the claims bar date.

2. Execution of this plan is funded in full by SPNB. If we disallow the claim, no creditor beside SPNB—the plan proponent—will be affected. There will be no windfall.

3. The County's timely claims show that it had notice of Grivas' bankruptcy proceeding. It could have timely assessed and filed for 1984 escape taxes. Or, it could have sought an extension under Rule 3003(c)(1).

4. The County's justification for that failure is that the debtor failed to timely file the proper tax return. However, this does not explain why the County did not conduct an audit or seek an extension upon learning of the bankruptcy.

5. There are two other persuasive factors here. First, the County evidently

---

**6.** Rule 3003(c)(3) provides in pertinent part, "The court ... for cause shown may extend the time within which proofs of claim or interest may be filed."

**7.** *See In re Fischer,* 109 B.R. at 384; *In re International Horizons,* 751 F.2d at 1218; *In re AM Int'l.,* 67 B.R. at 82; *U.S. v. Owens* 84 B.R. at 364; *In re Unroe,* 104 B.R. 77, 79 (Bankr.S.D. Ind.1989), *aff'd,* 119 B.R. 626 (S.D.Ind.1990).

did not receive actual notice of the claims bar date. Second, neither party has briefed or argued the issue of timeliness. SPNB's election not to argue this point is telling.[8]

Accordingly, this court finds that the equitable balance tips in favor of the County. We allow consideration of the late-filed claim for 1984 escaped property tax.

## II. PRIORITY UNDER 11 U.S.C. § 507(a)(7)(B).

To receive priority under 11 U.S.C. § 507(a)(7)(B), the County's claim must meet two conditions. First, the property tax liability must have been "assessed before the commencement of the case." Second, the tax must have been "last payable without penalty after one year before the date of the filing of the petition." 11 U.S.C. § 507(a)(7)(B). SPNB contends that, because the escape tax was entered onto the tax rolls in 1988, the tax was assessed in that year. The county asserts that, under California statutes and case law, an escape tax is assessed as of the date on which the tax lien attaches to the subject property. Here, that date is March 1, 1984 —well in advance of the petition date.

This court determines that this escape tax was assessed as of the lien date. Accordingly, we hold that this tax has priority under 11 U.S.C. § 507(a)(7)(B).

### A. The Tax Was Assessed Before Commencement Of The Case.

■ The Bankruptcy Code does not define the term "assessed". Because different federal, state and local taxes are assessed in different ways, Congress left the specific meaning of this term to be defined in the context of the tax in question. *Hartman v. United States*, 110 B.R. 951, 955 (D.Kan.1990). Since California law mandates the tax in question here, California law controls as to when it was assessed.

There are four dates which are germane to this discussion of applying the tax: The lien date, due date, enrollment date and the assessment date. Cal.Rev. & Tax.Code § 117 states, " 'Lien date' is the time when taxes for any fiscal year become a lien on the property." Here, under Cal.Rev. & Tax.Code § 2192, the tax lien for the 1984–85 fiscal year attached on March 1, 1984.[9] The due date here is the same.[10] Enrollment is the process of entering the tax liability on the secured or unsecured rolls.[11] Here, the enrollment date was October 6, 1988.

The California Revenue and Taxation Code does not specifically define an "assessment date." However, Cal.Rev. & Tax. § 2902 provides that enrollment completes the assessment process. Section 2902 states:

> The assessment of unsecured property shall be deemed complete *for the purpose of enforcing the collection thereof* when the assessor has made a record in writing of the assessment in such form as the board may provide. (Emphasis added.)

SPNB asserts that, under this section, the enrollment date and the assessment date are the same. This court does not construe § 2902 in that manner.

■ Where the language of a statute is plain, the court's sole task is to enforce it according to its terms. *United States v. Ron Pair Enterprises*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Every word should be given some significance, leaving no term devoid of meaning. *City and County of San Francisco v. Farrell*, 32 Cal.3d 47, 54, 648 P.2d 935, 938, 184 Cal.Rptr. 713, 716 (1982). The section states that enrollment completes the assessment "for the purpose of enforcing the collection" of taxes. If § 2902 did not contain this phrase, one could plausibly find that enrollment and

---

8. Since this court acts here within its discretionary powers, we need not reach whether SPNB waived its initial late filing objection.

9. Cal.Rev. & Tax.Code § 2192 provides, "except as otherwise specifically provided, all tax liens attach as of 12:01 a.m. on the first day of March

preceding the fiscal year for which the taxes are levied."

10. Cal.Rev. & Tax.Code § 2901 states, "Taxes on unsecured property are due on the lien date."

11. Cal.Rev. & Tax.Code § 2927 *et seq.*

assessment dates were the same. However, given the phrase's inclusion, § 2902 merely states that tax collectors can collect taxes after they are enrolled. Thus, while the assessment in this matter was completed after the claims bar date, the assessment date could be different from the enrollment date. That was the case here.

Both statute and California case law support the conclusion that the tax in this case was assessed as of the lien date. Cal.Rev. & Tax.Code § 401.3 states (in pertinent part), "The assessor shall assess all property ... on the lien date...." Additionally, § 2192 provides that tax liability attaches as of the lien date. Further, at least one California appellate court concluded that the right to the taxes on escaped property accrues on the lien date, rather than on the enrollment date. *California Computer Products, Inc. v. County of Orange*, 107 Cal.App.3d 731, 737, 166 Cal.Rptr. 68, 72 (1980). Finally, this position accords with rational public policy. A contrary conclusion would allow debtors to discharge taxes in bankruptcy merely because they had not filed tax returns before the claims bar date.

This court finds that the date when the lien attaches is the proper assessment date in this instance. Accordingly, the escape tax was assessed on March 1, 1984—well before the filing of the petition in 1988.

B. *The Tax Was Last Payable Without Penalty Within One Year Of The Petition Date.*

The Debtor filed his petition on March 31, 1988. Cal.Rev. & Tax.Code § 2922(a) provides that taxes enrolled after July 31 must be paid by the end of the month after enrollment to avoid penalty. Here, the taxes were payable without penalty until November 30, 1988. That date was eight months after the petition date.

The County's tax claim meets both conditions for priority under 11 U.S.C. § 507(a)(7)(B).

C. *Administrative Expense Under 11 U.S.C. § 502(i).*

In the alternative, the County claimed that if the tax was assessed post-petition,

the tax would be an administrative expense. SPNB asserts, and the County's reply brief acknowledges, that 11 U.S.C. § 502(i) precludes administrative expense status here. Since this court holds that the tax was assessed pre-petition, we need not reach this issue.

In conclusion, we find that the County's proof of claim was a new claim which does not relate back to a timely filed claim. Nevertheless, acting in equity, we allowed the late claim. Finally, while the 1984 escape tax was enrolled post-petition, it was assessed as of its pre-petition lien date. Accordingly, the 1984 escape tax is entitled to priority under 11 U.S.C. § 507(a)(7)(B).

SPNB's objection is overruled. The County is directed to prepare an order allowing its priority claim in conformance with this opinion within 10 days from its entry.