In re GARFINCKELS, INC., Debtor.

Bankruptcy No. 90–00506.

United States Bankruptcy Court,
District of Columbia.

July 5, 1996.

Stephen E. Leach, Tucker, Flyer & Lewis, Washington, DC, for debtor.

Philip D. Anker, Wilmer, Cutler & Pickering, Washington, DC.

David Frankel, Associate County Attorney, Rockville, MD.

Robert H. Rosenbaum, Meyers, Billingsley, Shipley, Rodbell & Rosenbaum, Riverdale, MD.

Dennis J. Early, Assistant U.S. Trustee, Office of the United States Trustee, Alexandria, VA.

## DECISION ON STATUS OF TAX CLAIMS OF ANNE ARUNDEL COUNTY, MONTGOMERY COUNTY AND PRINCE GEORGE'S COUNTY

S. MARTIN TEEL, Jr., Bankruptcy Judge.

These contested matters involve claims for personal property taxes asserted against the debtor, Garfinckels, Inc., by three counties in Maryland—Montgomery County, Anne Arundel County, and Prince George's County. Although the tax claims are identical in character, Anne Arundel County and Prince George's County assert that their tax claims are entitled to seventh priority under 11 U.S.C. § 507(a)(7)(B)[1] which deals with claims for *prepetition* property taxes. In contrast, Montgomery County seeks first priority under 11 U.S.C. § 507(a)(1), averring that its claim is entitled to administrative expense status under 11 U.S.C. § 503(b)(1)(B) as a claim for *postpetition* taxes incurred by the estate.

The court agrees with Montgomery County's characterization of its claim and, hence, will grant Montgomery County's request for payment of taxes as an administrative expense. Because the claims of Anne Arundel County and Prince George's County are identical in nature to Montgomery County's claim, the court will treat the counties' claims as a request for administrative expense priority under 11 U.S.C. § 503(b)(1)(B) and allow them in the amount requested. *See infra* part I.

In addition to the taxes themselves, the counties seek administrative expense priority for postpetition interest and penalties. The debtor[2] opposes the allowance of interest as

---

1. This decision is based on the text of Code prior to the recent amendments in October 1994.

2. The debtor filed objections to the proofs of claim filed by Anne Arundel and Prince George's

an administrative expense on the grounds that the Code fails to provide for postpetition interest. The debtor also argues that the penalties should be subject to equitable subordination under 11 U.S.C. § 510(c). Both items will be allowed as an administrative expense in the amounts requested.

## I

In later parts of this decision, the court concludes that the three counties have allowable claims for payment of administrative expenses. Although Anne Arundel and Prince George's Counties have not argued that their claims for unpaid taxes are entitled to administrative expense status under § 503(b)(1)(B), the court can accord the claims their proper status. *Cf. Guaranty Nat'l Ins. Co. v. Greater Kansas City Transp., Inc.*, 90 B.R. 461, 462–63 (D.Kan. 1988) ("if creditors were allowed to determine their claims' priorities simply by characterizing them as administrative expenses or as some other preferred claim, the Code's priority scheme would be useless") (citations omitted). There is no discernable difference between the claims of Anne Arundel and Prince George's Counties and the claim of Montgomery County, and, hence, no logical reason exists to treat them differently. Accordingly, the court will treat the counties' claims as requests for administrative expense priority and resolution of the issues presented by this case will apply equally to the claims of all three counties.

Neither the debtor nor other creditors are prejudiced by the court's decision to treat the counties' claims as a request for administrative expense priority because "[t]here is no time-bar to allowance of an administrative claim." *In re Forrest Marbury House Assoc.*, 163 B.R. 1, 2 (Bankr.D.D.C.1993).[3] Hence, the counties could file a request for administrative expense priority in lieu of the proofs of claim for prepetition tax priority.

Rather than require the counties to go through this unnecessary second step, the court will dispense with the requirement by treating the claims already filed as amended to constitute instead requests for payment of claims entitled to administrative priority.

## II

The chronology of events in this case is critical to the determination of the issues presented by this case.

Under Maryland tax law, the relevant law for the claims of all three counties, personal property taxes are "assessed"[4] each year on January 1, which is referred to as the "date of finality." Md.Tax–Prop.Code Ann. § 1–101(i).

The debtor, a major retailer, filed a petition under chapter 11 on June 21, 1990.

One day later, on June 22, 1990, the debtor sold all its inventory to Schottenstein Stores Corporation. The sale was made with court approval pursuant to a "Purchase, Agency and License Agreement" dated June 19, 1990.

Under Maryland tax law, personal property taxes are "due" each year on July 1. Md.Tax–Prop.Code Ann. § 10–102(a).

The debtor disposed of its remaining personal property between August 21, 1990, and September 14, 1990.

Anne Arundel and Prince George's Counties filed proofs of claim in this case for personal property taxes for the fiscal year July 1, 1990, through June 30, 1991, in the amount of $3,434.05 and $14,336.90, respectively. Montgomery County filed a request for payment of personal property taxes for the same period as an administrative expense of $35,727.75. All the claims are for personal property taxes imposed on inventory and other personal property owned by the debtor

Counties and to the request for administrative expense status filed by Montgomery County. The Official Committee of Unsecured Creditors ("creditors' committee") has filed various pleadings in support of the positions taken by the debtor. For ease of reference, discussions of the debtor's contentions will include any contentions the creditors' committee has made.

3. The cited case was decided before the 1994 amendments to § 503(a), permitting the court to allow the filing of a tardy request for payment of an administrative claim for cause.

4. The label "assessed" in the Maryland statute, however, does not mean "assessed" within the meaning of 11 U.S.C. § 507(a)(7)(B). *See infra* part III.A.

and located in the respective counties. Included as part of the claims are postpetition interest and penalties.

The debtor contends that the taxes at issue were assessed on January 1, 1990, and were last payable without penalty after one year before the date of the filing of the petition. Therefore, the debtor urges, the tax claims should be categorized as § 507(a)(7)(B) priority claims and not § 503(b)(1)(B) administrative expenses, focussing on the language in § 503(b)(1)(B)(i) seemingly excluding from administrative priority "a tax of a kind specified in section 507(a)(7) of this title ... [.]" In the alternative, the debtor argues that if the § 503(b)(1)(B) administrative expense status is appropriate, the taxes should at least be prorated to cover only those periods during the tax year when the debtor had use of the personal property taxed by the counties. This treatment is warranted, the debtor argues, in light of the language of § 502(b)(3); the standards for allowance of administrative expenses under § 503(b); and general equitable principles.

Finally, irrespective of what priority these claims are determined to have, the debtor maintains that (1) any interest on the claims should be disallowed entirely as not specifically provided for under § 503(b)(1)(C) and as barred by § 502(b)(2) and (2) that any penalties related to the claims should be disallowed or subordinated under 11 U.S.C. § 510(c) to the claims of general unsecured creditors. The court will grant administrative expense priority to interest and penalties in the amounts requested. *See infra* parts VI and VII.

### III

Section 503(b)(1)(B)(i) provides administrative expense status for "any tax incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title ... [.]" Taxes allowed administrative expense status under § 503(b)(1)(B) are entitled to first priority distribution under § 507(a)(1).

Section 507(a)(7)(B) provides seventh priority to "a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition[.]" The debtor argues that a tax *incurred* by the estate postpetition, as provided by § 503(b)(1)(B)(i), is not entitled to administrative expense status if it is *assessed* before the commencement of the case, as provided by § 507(a)(7)(B).

### A

■ The debtor's argument seizes on the Maryland statute's use of "assessed." The critical question, however, is the proper interpretation of "assessed" under 11 U.S.C. § 507(a)(7)(B). That question is a Federal question, not a state law question. While Maryland law establishes certain events with respect to the imposition of a tax, Federal law determines whether those events constitute an assessment. *In re King,* 961 F.2d 1423, 1426 (9th Cir.1992), *aff'g* 122 B.R. 383 (9th Cir. BAP 1991). *Cf. United States v. National Bank of Commerce,* 472 U.S. 713, 727, 105 S.Ct. 2919, 2927–28, 86 L.Ed.2d 565 (1985) (state law creates rights, but Federal law determines whether those rights constitute "property" under 26 U.S.C. § 6321).

The term "assessed" has varying meanings. *King,* 961 F.2d at 1427, quoting 122 B.R. at 385. Three possible meanings (among many) illustrate the ambiguity. Assessment could refer to the act, as under the Maryland statute,[5] of valuing property for property tax purposes as in "the tax assessor assessed the property as worth $10,000." Or assessment could refer to the act of enrolling the tax and thus fixing the point at which the tax collector may proceed to collect the tax. Or assessment could simply refer to the tax statute inescapably imposing the liability.

### 1

■ The first of these suggested meanings—valuation of the property—is readily rejected as the meaning of assessed in § 507(a)(7)(B) because § 507(a)(7)(B) applies only to "a property tax assessed before the commencement of the estate." In interpreting this phrase, it is important to observe that "assessed" refers to the property tax itself, and not to the property against which

---

**5.** *See infra* part IV.B.

the tax is assessed. With this in mind, "assessed" should be interpreted in terms of the date a taxpayer's liability for the taxes on the property becomes fixed, not whatever date the property's value is "assessed." *See, e.g., In re Fairchild Aircraft Corp.,* 124 B.R. 488, 494 (Bankr.W.D.Tex.1991); *In re Point Restaurant & Oyster Bar,* 86 B.R. 252 (Bankr. N.D.Fla.1988); *In re Stroud Wholesale, Inc.,* 37 B.R. 735, 741 (Bankr.E.D.N.C.1984), *rev'd in part on other grounds,* 47 B.R. 999 (E.D.N.C.1985); *In re Davis,* 11 B.R. 621, 623 (Bankr.N.D.Tex.1981).[6]

## 2

The second of these suggested meanings— the act of enrolling the tax—is the meaning of assessment under the Internal Revenue Code (26 U.S.C.). A tax is assessed by recording the liability of the taxpayer in the records of the Secretary. 26 U.S.C. § 6203. This gives rise to a lien and permits the Secretary to demand payment and proceed to collect the assessment. This is the meaning Congress had in mind under 11 U.S.C. § 507(a)(7)(A)(ii) in the case of Federal income taxes. *In re Hartman,* 110 B.R. 951 (D.Kan.1990). *See King,* 961 F.2d at 1425.

The same meaning applies to "assess" in 11 U.S.C. § 362(a)(6). *In re Heritage Vil. Ch. & Missionary Fellowship,* 87 B.R. 401, 403 (D.S.C.), *aff'd,* 851 F.2d 104 (4th Cir. 1988). In the case of a California income tax, which made no provision for a recordation of the tax as the act of assessment, the Ninth Circuit concluded that the tax was assessed on the date that the tax became final due to the debtor's failure to protest "notices of proposed additional tax" because after that date the tax collector could demand payment. *King,* 961 F.2d at 1427.

If "assessed" for purposes of 11 U.S.C. § 507(a)(7)(B)—the statutory provision applicable here—similarly means the point at which the tax collector is free to proceed to collect the tax, the property taxes at issue here were not assessed until after the petition was filed because the tax did not even become inescapably fixed until after the petition was filed. So there was nothing to assess until then.

## 3

■ But the court believes Congress did not have 26 U.S.C. § 6203 in mind in enacting 11 U.S.C. § 507(a)(7)(B) because property taxes so often are thought of as arising with respect to the property which is an ultimate source of recovery, such that the collection of the tax is not the critical focus. Rather, the critical focus is when the property inescapably becomes subject to the tax, that is, when the tax is imposed. Decisions analyzing § 507(a)(7)(B) are consistent with that interpretation. *See, e.g., In re Scrap Disposal, Inc.,* 38 B.R. 765 (9th Cir. BAP 1984), *aff'g* 24 B.R. 178 (Bankr.S.D.Cal.1982) (court focussed on when tax was incurred, not when tax bill was sent out); *In re Grivas,* 123 B.R. 876, 880–81 (Bankr.S.D.Cal.1991) (tax assessed on date lien arose by statute, not on date of enrollment on tax rolls). *See also* the cases cited in part III.A.1.

That this is the more logical interpretation can be illustrated by a hypothetical property tax. Assume that a property tax which is fully fixed on January 1 is recorded later that year for billing and collection purposes on a date after the filing of the petition commencing a bankruptcy case. Under the court's interpretation, the property tax would nevertheless be a prepetition claim "assessed" within the meaning of § 507(a)(7)(B) and hence entitled to priority under § 507(a)(7)(B) because the tax was fully imposed by law before the filing of the petition. That would comport with Congress' intent that the estate be liable only for those taxes the estate incurred. If the hypothetical tax were instead deemed assessed after the petition, it would not be entitled to § 507(a)(7)(B) priority treatment because it was not assessed before the petition and would not be entitled to administrative priority treatment because it was not incurred by the estate. The tax would fall into a black hole and be accorded only general unsecured status. It

---

**6.** These decisions have conflicting holdings, but they are cited because they focus not on the date of valuation as controlling but on the tougher issue of when the tax becomes fixed. The issue of when the taxes here became fixed (and what that should mean) is discussed in addressing the other possible meanings of "assessed."

is doubtful Congress intended such taxes to be accorded no priority whatsoever. It follows that "assessed" under 11 U.S.C. § 507(a)(7)(B) must mean that the tax has become fixed and unalterable by the tax statute.

4

As will be seen, under that interpretation of "assessed," the term means the same as "incurred" under § 503(b)(1)(B)(i). The Maryland statute's reference to January 1 as the date of finality for purposes of assessment for the taxable year next following does not mean that January 1 is the date on which the tax was "assessed" (that is, when it was incurred) within the meaning of 11 U.S.C. § 507(a)(7)(B). As discussed in part IV.B, the Maryland statute uses "assessment" in the sense of valuing the property, not in the sense of when the tax becomes unalterably fixed. That meaning of assessment is plainly not how § 507(a)(7)(B) uses the term.[7]

B

■ The court also rejects the debtor's argument based on an earlier decision of this court addressing this same issue. *In re Carlisle Court, Inc.*, 36 B.R. 209, 216–18 (Bankr. D.D.C.1983). The clause in § 503(b)(1)(B)(i) excepting § 507(a)(7) taxes from its application is intended only to prevent prepetition taxes incurred by the debtor from attaining administrative expense status. *In re Lumara Foods of Am., Inc.*, 50 B.R. 809, 816 (Bankr.N.D.Ohio 1985); *In re W.L. Jackson Mfg. Co.*, 50 B.R. 506, 509 (Bankr.E.D.Tenn. 1985). Taxes arising from conduct of the debtor, as opposed to the estate, are prepetition taxes and should not be compensated as an administrative expense of the estate. *See United States v. Friendship College, Inc.*, 737 F.2d 430, 431–32 (4th Cir.1984). Conversely, "post-petition taxes incurred by the estate, although of a kind listed in § 507(a)( [7] ), would be granted administrative status." *In re Carlisle Court, Inc.*, 36 B.R. at 216 (citation omitted).

Section 502(i) does not change the court's analysis. Section 502(i) provides

A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(7) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

At first blush, § 502(i) seems to require all claims for taxes falling within the definition under § 507(a)(7) to be treated as though they were prepetition claims without regard to when the taxes were incurred. At least one court has held to this effect. *In re New England Carpet Co.*, 26 B.R. 934, 937–38 (Bankr.D.Vt.1983). However, § 502(i) contains an internal limitation precluding this interpretation. It applies only to "a tax entitled to priority under section 507(a)(7)." For a property tax to qualify for such priority, it must be "assessed before the commencement of the case." 11 U.S.C. § 507(a)(7)(B). Thus, § 502(i) has no application to a property tax "assessed" or "incurred" after the commencement of the case.

Furthermore, as this court explained in *Carlisle,*

If § 502(i) is read to relegate all post-petition tax claims of the kind described in § 507(a)( [7] ) to pre-petition status, ... the statutory language in § 503(b), *excluding* taxes of a kind specified in § 507(a)( [7] ) and denying them administrative priority, becomes meaningless and [such a reading] would appear to be in clear conflict with § 503(b)(1)(B).

36 B.R. at 217 (citations omitted). Plainly, Congress did not mean to relegate all taxes incurred by the estate to § 507(a)(7) status.

■ Thus, properly interpreted, § 502(i) only makes clear that taxes incurred by the debtor prepetition but not "arising"—that is, becoming due and payable—until after the petition is filed are allowed or disallowed

---

7. As will be seen in part IV.B, under the Maryland statute the tax is but a tentative tax as of

January 1 preceding the due date of the tax

under § 502 as any other prepetition claim.[8] *E.g., In re Mall At One Assoc., L.P.,* 185 B.R. 1009, 1019–1020 (Bankr.E.D.Pa.1995); *In re Hotel Nevada Corp.,* 75 B.R. 174, 176 (Bankr.D.Nev.1987); *In re Carlisle Court,* 36 B.R. at 217–18.

Accordingly, the central question for the court to answer in this case is when were the taxes incurred.

## IV

If the taxes were "incurred" by the debtor *before* the petition was filed, the instant tax claims are for prepetition taxes and are entitled to only seventh priority under § 507(a)(7)(B). But if the taxes were "incurred" by the estate *after* the filing of the petition, the claims are for postpetition taxes and are administrative in nature under § 503(b)(1)(B) and are thus entitled to first priority under § 507(a)(1). The court concludes that the taxes were incurred by the estate postpetition and so are entitled to administrative status under § 503(b)(1)(B).

## A

The term "incurred," as used in § 503(b)(1)(B)(i), is not defined by the Code and has been held to be "facially ambiguous." *In re Pacific–Atlantic Trading Co.,* 64 F.3d 1292, 1298 (9th Cir.1995). In an effort to determine whether taxes on income that accrued prepetition but became payable postpetition were "incurred by the estate," the court of appeals in *Pacific–Atlantic* relied on proposed legislation from 1978, which was never enacted, that defined incurred for purposes of the various tax collection rules. *Id.* at 1298–1301. Specifically, § 346(a) of the proposed legislation provided

(a) For purposes of this title—

(1) a tax on or measured by income or gross receipts for a taxable period shall be considered incurred on the last day of the taxable period;

(2) a tax on or measured by payment of wages or compensation, production or use of property, transfers by death, gift, sale or otherwise (other than a tax on income from such transfer), or other transactions or events shall be considered incurred on the last day of such transaction or event.

S.Rep. No. 2266, 95th Cong., 2d Sess. § 346(a) (1978), reprinted in Collier on Bankruptcy, Appendix Volume 3 at VII (15th ed. 1995). Based on paragraph (a)(1) and the legislative debate, the court of appeals in *Pacific–Atlantic* concluded that the income tax was incurred "on the last day of the taxable period." 64 F.3d at 1301.

Setting aside this court's concerns about the dubious nature of relying on unenacted proposed legislation, this court can find little guidance from the statements in the proposed legislation concerning personal property tax in paragraph (a)(2). Assuming the Maryland property tax is a tax on "use of property," it is not at all clear what "the last day of such transaction or event" would be for purposes of determining when the tax was incurred. Rather, the court concludes that the proposed definition only makes the term "incurred" more ambiguous, which perhaps was one reason it was never enacted. Accordingly, the court declines to rely on the definition in the proposed legislation.

Rather, the court will follow the other courts that have looked at this issue and review state law to determine whether the tax is incurred postpetition for purposes of administrative expense priority. *See, e.g., In re Midland Indus. Serv. Corp.,* 35 F.3d 164 (5th Cir.1994), *cert. denied sub nom. Midland Cent. Appraisal Dist. v. Midland Indus. Serv. Corp.,* —— U.S. ——, 115 S.Ct. 1359, 131 L.Ed.2d 216 (1995). In analyzing this issue these courts examine certain relevant dates imposed by state law: the date the tax is assessed; the date the lien is imposed; and the date the tax is due. *See*

because the tax is subject to modification if the property is destroyed or sold before July 1.

**8.** An example of such a tax claim is a federal withholding tax incurred by the debtor over prepetition periods but not actually "arising" until after the filing of the petition. *See In re Overly–Hautz Co.,* 57 B.R. 932, 937 (Bankr.N.D.Ohio

1986), *aff'd,* 81 B.R. 434 (N.D.Ohio 1987). Another example is a federal investment credit recapture tax arising postpetition but incurred based on the debtor's prepetition use of the investment tax credit. *See In re Higgins,* 29 B.R. 196, 201 (Bankr.N.D.Iowa 1983).

*id.* In their analysis the courts essentially seek out the date on which the tax is inescapably imposed on the debtor or the estate and declare that to be the date the tax is incurred. *See id.*

A significant number of courts have allowed administrative expense status where the tax is *due* postpetition, reasoning that the due date is the point when the liability has been inescapably imposed. *In re 7003 Bissonnet, Inc.,* 153 B.R. 455 (Bankr.S.D.Tex. 1992); *In re Fairchild Aircraft Corp.,* 124 B.R. 488, 494 (Bankr.W.D.Tex.1991); *In re Terminals Unlimited, Inc.,* 63 B.R. 419 (Bankr.D.Md.1986); *In re Davis,* 11 B.R. 621 (Bankr.N.D.Tex.1981).

Other courts, however, reviewing state tax law imposing a lien on the taxed property prepetition, have rejected the due date in favor of the lien date as the date the tax was incurred and held that the tax is not entitled to administrative expense status in such a case. *See In re Midland Indus. Serv. Corp.,* 35 F.3d at 166–67; *In re Members Warehouse, Inc.,* 991 F.2d 116 (4th Cir.1993); *In re Western States Distrib., Inc.,* 179 B.R. 666 (Bankr.D.Colo.1995); *In re Florida Eng'd Constr. Prod., Corp.,* 157 B.R. 698 (Bankr. M.D.Fla.1993); *In re Grivas,* 123 B.R. 876 (Bankr.S.D.Cal.1991); *In re Point Restaurant and Oyster Bar,* 86 B.R. 252 (Bankr. N.D.Fla.1988). These courts reason that if, under the relevant state law, once the lien is imposed there is effectively no mechanism for the debtor to escape the liability, then the tax is incurred at that point. *In re Members Warehouse, Inc.,* 991 F.2d at 119–20.

Indeed, one court held that, regardless of when the lien is imposed, where the debtor's property tax burden was inescapable prepetition, the tax liability was not entitled to administrative status. *In re Columbia Gas Transmission Corp.,* 37 F.3d 982 (3d Cir. 1994) ("It would not have affected the tax liability of Columbia Gas under West Virginia law if its property in West Virginia had been sold or destroyed after the ownership of the property had fixed the liability"), *cert. denied sub nom. West Virginia State Dept. of Tax and Revenue v. IRS,* —— U.S. ——, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995).

**B**

■ The court turns now to review Maryland tax law in light of the above analysis. The court concludes that under Maryland law the county property taxes are incurred, under § 503(b)(1)(B), on July 1 of the taxable year and so, as a postpetition expense incurred by the estate, the taxes are entitled to administrative expense status.

In Maryland, the taxable year—the period for which the relevant taxing authority "computes, imposes, and collects taxes"—runs from July 1 of a given year until June 30 of the succeeding year. Md.Tax–Prop.Code Ann. § 1–101(ii).

The taxation process begins on the January 1 preceding the July 1 that is the first day of the taxable year. January 1 is the "date of finality" for purposes of "assessment." Md.Tax–Prop.Code Ann. § 1–101(i). The date of finality is the date on which "assessments become final for the taxable year next following." *Id.* "Assessment" is defined as "the value to which the property tax may be applied." *Id.* § 1–101(c)(2). To "assess" means "to determine the value to which the property tax rate may be applied." *Id.* § 1–101(b)(2). Property is valued as of the date of finality. *Id.* §§ 8–107(a) and 8–110(b). The process of assessment provides the basis for taxation. *See Consolidated Gas Co. of Baltimore v. Mayor of Baltimore,* 101 Md. 541, 61 A. 532, 538–39 (1905).

The date of finality is also significant because "[e]xcept as otherwise provided in this subtitle, the owner of property on the date of finality is liable for property tax that is imposed on that property for the following taxable year." *Id.* § 10–401. The "except as otherwise provided language" refers to two exceptions to the rule that the property owner on the date of finality is liable for any property taxes subsequently imposed. First, if personal property is "totally destroyed" between the date of finality and the following July 1, the tax on the property destroyed is not due. Md.Tax–Prop.Code Ann. § 10–304(b)(1). If personal property is destroyed after July 1, the taxes are pro-rated over 3-month intervals. *Id.* § 10–304(b)(2)–(5).

Second and more significantly, if a business "transfer[s] all personal property or all the stock in business"[9] some time between January 1 and July 1, the property transferred is assessed solely to the transferee as long as one of the parties files a report detailing the transfer with the taxing authority by the following October 1. *Id.* § 10–402(b)(1). If neither party files a report of transfer, the transferor remains liable for the taxes, jointly and severally, with the transferee. *Id.* § 10–402(b)(2); *see Vermont Fed. Sav. & Loan Ass'n v. Wicomico County,* 263 Md. 178, 283 A.2d 384, 389–90 (1971). If the transfer is made *after* July 1, the transferor and transferee are jointly and severally liable for the taxes, whether or not a report is filed. *Id.* § 10–402(c)(1). Finally, regardless of whether the transfer occurred before or after July 1, if the transferor has paid the taxes, the transferor may require the transferee to adjust the property tax. Md.Tax–Prop.Code Ann. §§ 10–402(b)(4), (c)(2).

Once personal property has been assessed, the governing body of a county may impose the property tax for the taxable year on the property assessed in that county. Md.Tax–Prop.Code Ann. §§ 6–202 and 6–204. Between January 1 and the following July 1, "the governing body of each county annually shall set the tax rate for the next taxable year." *Id.* § 6–302(a). The requirement of setting the tax rate by July 1 is mandatory, with the result that once July 1 passes, a county cannot raise its tax rate. *Board of County Comm'rs of Garrett County v. Bolden,* 287 Md. 440, 413 A.2d 190, 197 (1980).

Property tax is due on July 1 in the beginning of each taxable year. Md.Tax–Prop. Code Ann. § 10–102(a). Coinciding with the July 1 due date, "liability for the tax and a 1st lien attaches to the personal property in the amount of the property tax due on the personal property." Md.Tax–Prop.Code Ann. §§ 14–805(b) and 14–804(b); *see In re Sylvia Dev. Corp.,* 178 B.R. 96 (Bankr.D.Md. 1995); *In re Reamy,* 169 B.R. 352 (Bankr. D.Md.1994).

## C

As can be seen from this review, July 1 is the earliest date on which the tax liability is imposed and a corresponding lien attaches in Maryland. *See In re Terminals Unlimited, Inc.,* 63 B.R. at 421 ("Maryland law is unmistakable. The liability for the tax and a first lien for payment attach when the taxes are due"). Accordingly, under the case law, July 1 is the date when the tax is incurred under § 503(b)(1)(B).

This result is in accord with the cases concluding that the due date is the date the taxes are incurred. *See, e.g., In re 7003 Bissonnet, Inc.,* 153 B.R. 455 (Bankr. S.D.Tex.1992). This result is also in accord with the cases concluding the lien date is the date the taxes are incurred. *See, e.g., In re Members Warehouse, Inc.,* 991 F.2d 116 (4th Cir.1993). Finally, this result is also in accord with the cases concluding the relevant date is simply when the taxes are inescapable. *See, e.g., In re Columbia Gas Transmission Corp.,* 37 F.3d 982 (3d Cir.1994). While it is true that the owner of property on the date of finality is liable in Maryland for taxes imposed on that property, this rule acts merely as a presumption in favor of continued ownership on July 1, at which time the taxes are actually imposed. In the interim, the debtor may escape the liability in Maryland as result of the destruction of the personal property subject to taxation or by transferring all of the personal property or stock in business as long as the transfer is reported. *Compare Columbia Gas,* 37 F.3d at 986 (no mechanism in West Virginia for avoiding tax liability as a result of sale or destruction of property after return filed); *Members Warehouse,* 991 F.2d at 119–20 (no mechanisms in North Carolina for avoiding tax liability after January 1). Moreover, before July 1, the state tax collector has no means for attaching, or otherwise maintaining control over, personal property which might be removed from the jurisdiction in which it was assessed. *Compare Members Warehouse,* 991 F.2d at 119, 120 (mechanisms exist in North Carolina for maintaining control over property assessed). All these

---

**9.** "Stock in business" is defined as "inventory of a commercial or manufacturing business that is engaged in business in this State." *Id.* § 8–110(a)(4)(i).

attributes of the Maryland taxing scheme indicate that July 1, rather than the preceding January 1, is the true date of imposition on which the liability for taxes is incurred. *Compare In re Members Warehouse, Inc.,* 991 F.2d at 118–19 (under North Carolina law, tax is incurred on January 1 because tax liability and lien attach on January 1).

■ Having concluded that July 1 is the date that the taxes are incurred in Maryland and because the petition was filed on June 21, 1990, the property taxes were not incurred until after the commencement of the case. Thus, the taxes were incurred by the estate postpetition. Accordingly, the counties' tax claims will be allowed administrative expense status under § 503(b)(1)(B)(i) and are entitled to first priority under § 507(a)(1).

### V

The debtor further argues that even if the taxes are entitled to administrative expense status, they should be prorated over the Maryland taxable year to reflect the estate's actual use and possession of the property. Specifically, the debtor urges that the taxes on the *inventory* be eliminated because the inventory was sold before July 1, 1990, to Schottenstein Stores. The debtor further urges that the taxes on the *remaining personal property,* which was sold between August 21, 1990, and September 14, 1990, be reduced to about ⅙ of the total billed. As authority for its position, the debtor cites § 502(b)(3), § 503(b), and general equitable principles. The court rejects the debtor's argument with respect to each of the alleged bases for prorating.

### A

■ The debtor maintains that the estate did not incur taxes on the inventory because the debtor sold the inventory on June 22, 1990, before the taxes were incurred on July 1, 1990. However, whether a tax is incurred so that a claim arises is an issue to be resolved at state law. *See Members Warehouse,* 991 F.2d at 118. As explained above, under Maryland tax law if a business transfers all its inventory between the January 1 and July 1, the property transferred is assessed solely to the transferee *as long as one of the parties files a report detailing the transfer with the taxing authority by the following October 1. Id.* § 10–402(b)(1). If neither party files a report of transfer, the transferor remains liable for the taxes, jointly and severally, with the transferee. *Id.* § 10–402(b)(2). Even assuming the postpetition sale of the debtor's inventory to Schottenstein Stores qualifies as a sale of *all* the debtor's inventory, the debtor has not alleged that the debtor or Schottenstein Stores ever filed the necessary report by October 1, 1990.

Furthermore, as to the debtor's remaining personal property sold *after* July 1, although the debtor could perhaps seek contribution from the transferee, under Maryland law the debtor remains liable for the taxes. *See* Md.Tax–Prop.Code §§ 10–402(c)(1) and (c)(2).

Accordingly, the debtor's estate remains liable for the property taxes imposed on its taxed property despite the sales.

### B

■ In light of the court's decision above concerning priority, the debtor's reliance on § 502(b)(3) is similarly unavailing. Section 502(b)(3) provides that if an objection to a proof of claim is made, the court shall determine the amount of the claim and allow the claim in that amount "except to the extent that if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property."

However, § 502(b)(3) has no application to administrative claims arising under § 503. *In re Pioneer Title Bldg., Inc.,* 133 B.R. 822, 824–25 (Bankr.W.D.Tex.1991); *In re Wendy's Food Sys., Inc.,* 117 B.R. 333, 334 (Bankr.S.D.Ohio 1990); *In re Spruill,* 78 B.R. 766, 771 (Bankr.E.D.N.C.1987). Rather, before § 502(b)(3) may be applied to disallow a claim to any extent, the claim must be a prepetition claim of a type for which a proof of claim may be filed under 11 U.S.C. § 501. Thus, § 502(b)(3) is not applicable to the claims here which the court has already determined arose under § 503.

The court finds inapposite and unsupportive the two cases cited by the debtor in support of its position—*In re Damar Mach., Inc.*, 30 B.R. 256 (Bankr.D.Me.1983), and *Wendy's Food.* Not only did *Damar* involve a proof of claim filed under § 501, rather than a request under § 503 as in this case, the personal property in *Damar* was also sold before the petition was filed, rather than after the petition date as in this case.

Similarly, in *Wendy's Food* the only issue was whether the § 502(b)(3) limitation applied to a § 503 request for payment of administrative expenses. The court held that § 502(b)(3) was *in*applicable. 117 B.R. at 334. Unlike *Damar*,[10] the court in *Wendy's Food* concluded that because, as of the petition date, the estate had an interest in the personal property taxed, the estate was liable for the postpetition taxes as an administrative expense. *Id.* at 334–35.

In accord with *Pioneer Title, Wendy's Food,* and *Spruill,* the court holds that § 502(b)(3) provides no basis for disallowing any part of a request for payment of administrative expenses under § 503.

## C

█ The debtor further argues that because the property was sold before the relevant taxes were incurred, § 503(b)(1)(B) provides no basis for imposing liability for the taxes on the estate. It is impossible for such taxes to benefit the estate, the debtor argues, where the estate has no use of the property during the taxable year. The court rejects the debtor's argument.

Section 503(b)(1)(B)(i), on its face, does not require that a tax meet the "preserving the estate" test found in subsection (1)(A) of § 503(b), but only that the tax be "incurred by the estate." This is a case controlled by *United States v. Ron Pair Enterp., Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), where the Supreme Court held that where the statutory scheme is unambiguous, there is no need for a court to inquire beyond the plain language.

The court has already concluded above that the taxes were incurred by the estate, and accordingly, they are entitled to administrative status under the plain language of § 503(b)(1)(B)(i).

The court finds inapposite the case cited by the debtor in support of its argument—*In re Chateaugay Corp.*, 146 B.R. 626, 633 (S.D.N.Y.1992), *vacated*, 157 B.R. 74 (S.D.N.Y.1993). That case involved a claim for postpetition excise taxes filed under subsection *(1)(A)* of § 503(b), rather than subsection (1)(B)(i) as in this case.

## D

Finally, despite the debtor's argument to the contrary, general principles of equity fall in the favor of the counties. The estate was the beneficiary of an order granting its motion to sell the inventory "free and clear of all liens." This maximized the estate's recovery. The proceeds from the sale of the inventory were added to the estate's coffers and will be distributed to creditors in accordance with the Code.

On the other hand, by operation of the same court orders, the counties cannot pursue their tax claims against either the inventory or Schottenstein. It would be patently unfair for the estate to receive full benefit of the sale free and clear of liens at the expense of the counties. Finding for the debtor would result in the counties funding the postpetition purchases to the extent of the tax liability, yet having no recourse against either the purchaser or the estate except for a general unsecured claim. Left with only a general unsecured claim, the counties would then have to share equally with all unsecured creditors the extra proceeds received by the estate because the property was sold without any tax liability attached. This would be inconsistent with the Code and cannot be sanctioned.

The debtor should have taken into account the Maryland taxing scheme when it negotiated with Schottenstein for the personal property's sale. Indeed, the purchase agreement indicates the debtor will be liable for all

---

10. The *Wendy's Food* court mistakenly stated that the *Damar* court disallowed the claim under § 503(b). At the page of the *Damar* opinion cited by the *Wendy's Food* court, the *Damar* court holds that the claim should be disallowed under § 502(b)(3). *Damar*, 30 B.R. at 258.

claims against the inventory. Presumably, the assumption of this liability was factored into the purchase price. If it was not, it should have been. To the extent the debtor did not factor taxes into the purchase price, the counties should not now bear the burden of the debtor's omissions to the benefit of creditors who did not fund the purchase.

The equities also lie in the counties' favor with respect to the personal property sold after July 1. Here, the tax liability attached to the property while it was still in the debtor's possession. (It is not clear to what extent this property was sold free and clear of liens.) No measure of fairness can allow the estate to escape liability for taxes duly imposed where the estate had full use of the property after the petition date, sold it, and received the sale proceeds for the benefit of all creditors. The debtor maintains that it is inequitable to make the estate pay for these taxes when the counties can seek their payment from the various purchasers of the property taxed. *See* Md.Tax–Prop.Code § 10–402(c). But this argument fails to take into account the fact that the estate had full use of the property and should pay for the costs associated with its use.

In sum, the court finds no basis whatsoever for prorating the counties' claims for taxes. Accordingly, it will decline to do so.

## VI

■ The debtor alleges that the Code does not provide for interest on postpetition taxes to be treated as an administrative expense. Although some courts have held that such interest cannot be accorded administrative expense status, *e.g., In re Luker,* 148 B.R. 946 (Bankr.N.D.Okla.1992), *aff'd sub nom., United States v. Luker,* 1993 WL 740989 (N.D.Okla.1993); *Lumara Foods,* 50 B.R. at 816–17, the better reasoned authority has held that it should be, *e.g., In re Al Copeland Enterprises, Inc.,* 991 F.2d 233 (5th Cir.1993); *In re Flo–Lizer, Inc.,* 916 F.2d 363 (6th Cir.1990); *In re Mark Anthony Constr., Inc.,* 886 F.2d 1101 (9th Cir.1989); *In re Allied Mechanical Servs., Inc.,* 885 F.2d 837 (11th Cir.1989); *United States v. Friendship College, Inc.,* 737 F.2d 430, 433 (4th Cir. 1984). The court agrees with, and adopts,

the reasoning of the above cases holding that postpetition interest on taxes should be awarded as an administrative expense. Therefore, the counties are entitled to administrative expense status for postpetition interest to the extent requested.

## VII

Finally, the debtor argues that the instant postpetition tax penalties should be disallowed or subordinated. The court disagrees.

### A

As for disallowance, 11 U.S.C. § 503(b)(1)(C) specifically provides that "there shall be allowed administrative expenses ... including any ... penalty ... relating to a [postpetition tax under § 503(b)(1)(B) ]." This directive is mandatory. Accordingly, the postpetition tax penalties are allowed as an administrative expense to the extent requested.

### B

■ Under 11 U.S.C. § 510(c)(1), the court may apply principles of equitable subordination to "subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim." Before applying their equitable subordination power, courts have typically required that three elements be established:

(1) the claimant must have engaged in some type of inequitable conduct;

(2) the misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant; and

(3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code.

*In re Fabricators, Inc.,* 926 F.2d 1458, 1464–65 (5th Cir.1991) (citations omitted); *accord In re Lemco Gypsum, Inc.,* 911 F.2d 1553, 1556 (11th Cir.1990). Once the three elements have been established, the court is permitted, but not required, to equitably subordinate a claim. *Fabricators,* 926 F.2d at 1464 n. 9.

The Supreme Court recently ruled in *United States v. Noland,* —— U.S. ——, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996), that an

administrative tax penalty claim under § 503(b) may not be equitably subordinated under § 510(c)(1) on a categorical basis. In *Noland,* the bankruptcy court subordinated the tax penalty claims to general unsecured claims in an effort to ensure compensation of claims for actual loss. *In re First Truck Lines, Inc.,* 141 B.R. 621 (Bankr.S.D.Ohio 1993). The district court [11] and the Court of Appeals for the Sixth Circuit affirmed, with the appeals court reasoning that the subordination of tax penalties was appropriate because the tax penalties did not represent actual pecuniary loss and because the penalties served no punitive purpose and thus are "susceptible to subordination" by their very "nature." *In re First Truck Lines, Inc.,* 48 F.3d 210, 218 (6th Cir.1995). The Supreme Court reversed. *Noland,* ⎯ U.S. at ⎯, 116 S.Ct. at 1528. The Court noted that although Congress intended to give the courts "some leeway to develop the doctrine" of equitable subordination when § 510(c) was enacted, Congress clearly intended "to start with existing doctrine," which, as outlined above, requires some showing of inequitable conduct by the creditor in order to subordinate. *Id.* at ⎯⎯⎯⎯, 116 S.Ct. at 1526–27. Given the potential for tension between existing doctrine and judicial leeway, the Court summarized the issue in *Noland* as follows:

> The question is whether that leeway is broad enough to allow subordination at odds with the congressional ordering of priorities by category.

*Id.* at ⎯, 116 S.Ct. at 1527.

The Court answered its question in the negative, concluding that Congress did not intend to authorize the courts "to conclude on a general categorical level that penalties should not be treated as administrative expenses to be paid first...." *Id.* Accordingly, although the Court explicitly did *not* hold that "a bankruptcy court must always find

creditor misconduct before a claim may be equitably subordinated," the Court *did* hold "that (in the absence of a need to reconcile conflicting congressional choices) the circumstances that prompt a court to order equitable subordination must not occur at the level of policy choice at which Congress itself operated in drafting the Bankruptcy Code." *Id.* at ⎯, 116 S.Ct. at 1528 (citation omitted). The Court concluded that the court in *Noland* had overstepped these bounds. *Id.*

■ In the present case, as in *Noland,* the debtor urges the court to subordinate the counties' tax penalty claims on the grounds that in light of the limited funds in the estate "[f]airness demands that the Court subordinate penalty claims to claims of creditors for actual loss." Opp. of the Official Comm. of Unsecured Creditors to App. of Montgomery County at 9 (Sept. 28, 1992).[12] The debtor further urges that "[t]he penalty assessments made by Montgomery County in the Application are punitive in nature and do not constitute compensation for any actual pecuniary loss suffered by Montgomery County." Obj. of the Debtor to App. for Payment of Montgomery County at 3 (Sept. 28, 1992). It was exactly this sort of categorical basis for subordination that the Court rejected in *Noland.* Accordingly, in accordance with *Noland,* this court rejects the debtor's urgings to subordinate the tax penalty claims on the grounds that the claims are not compensatory in nature.

### C

■ The only non-categorical basis for subordination pointed to by the debtor is Montgomery County's delay in applying for administrative expense status, which the debtor contends is inequitable conduct warranting equitable subordination. According to the debtor, this delay resulted in interest and penalties accruing.[13]

11. *IRS v. Noland,* 190 B.R. 827 (S.D.Ohio 1993).

12. The counties have not insisted that this argument be addressed in an adversary proceeding, as required by F.R.Bankr.P. 7001.

13. Montgomery County has not insisted that this equitable subordination issue be tried by an ad-

versary proceeding, as required by F.R.Bankr.P. 7001. The issue was not raised against the other two counties (who cast their claims as non-administrative), but there is not apparent reason why the issue would be treated differently as to them.

It is important to note that the debtor makes no claim that Montgomery County failed to impose its taxes in a timely fashion. Once those taxes had been imposed, the estate should have seized the initiative to resolve the status of the taxes, for example, by ·filing an interpleader suit. Doing this early on in the proceedings would have served to minimize the accrual of interest and penalties while at the same time providing a strong basis for seeking equitable subordination of any penalties incurred during the period required to resolve the tax questions. It is hard to see how the general unsecured creditors have been injured by anything Montgomery County has or has not done. It imposed its taxes in a timely fashion. The county's delay in seeking administrative expense status cannot have had any effect on the estate's ability to take steps to resolve the status of the taxes. Rather, any injury resulted from the estate's failure to move quickly to protect its interests once the taxes were imposed.

In arguing that delay in collecting a debt justifies equitable subordination, the debtor relies on *Virtual Network,* 902 F.2d at 1250. There, the Seventh Circuit held, without explanation, that the facts of the case supported the district court's rationale that delay in collection justifies subordination. However, an examination of the district court opinion reveals no discussion of delay. 98 B.R. 343 (1989). Instead, the portion of the opinion the appellate court purports to summarize deals with the notion that the taxing authority must justify shifting the burden of penalties to innocent creditors. 98 B.R. at 351–52. The district court concluded no such justification existed. *Id.* at 352. But that case involved prepetition penalties where no argument exists that the penalties were a cost of administering the estate for the benefit of creditors. That argument does exist here and has been explicitly sanctioned by Congress in enacting § 503(b)(1)(C).

Finally, once bankruptcy is filed, the general unsecured creditors are in a better position to influence the administration of the estate than the taxing authority; they should not be allowed to profit from the estate's noncompliance with applicable laws. *Cf.*

*United States Dept. of Interior v. Elliott,* 761 F.2d 168, 171–2 (4th Cir.1985) (Bankruptcy Act case involving claims for postpetition environmental penalties); *In re Vel Rey Properties, Inc.,* 174 B.R. 859, 866 (Bankr.D.D.C. 1994). If the administration of the estate injures a taxing authority, the estate and its creditors should bear the full costs, penalties included. This will encourage the administration of the estate in compliance with all laws and will provide an incentive for the creditors to see that the debtor obeys the law.

Accordingly, the court will grant administrative expense status under § 503(b)(1)(C) to postpetition tax penalties to the extent requested.

### CONCLUSION

Based on the foregoing, the court will treat the claims of Anne Arundel County and Prince George's County for § 507(a)(7) priority as a request for administrative expense status under § 503(b)(1) and the court will grant administrative expense priority status under § 503(b)(1) to the tax claims, including interest and penalties, of Anne Arundel County, Montgomery County, and Prince George's County to the extent requested. An appropriate order will follow.