■ In the Matter of BCA-ARMONK LANES, INC., Appellant, v MARION WOODS, as Assessor of the Town of North Castle, et al., Respondents. — In consolidated proceedings pursuant to article 7 of the Real Property Tax Law, petitioner appeals from a judgment of the Supreme Court, Westchester County (Sullivan, J.), entered May 6, 1981, which, *inter alia,* reduced the assessment by $50 for the year 1978 (on the ground of inequality) and sustained the assessment for the year 1979. Judgment reversed, on the law and the facts, without costs or disbursements, and case remitted to Special Term for a new trial, at which the evidentiary matters herein discussed are to receive consideration. The subject property is a 6.809-acre parcel of land in the Town of North Castle. The improvement consists of a one-story, free-standing masonry building, designed, constructed and used as a 40-lane bowling center. It contains approximately 38,800 square feet and was constructed in 1960 or 1961. During both years under review the subject property was assessed as follows:

| | |
|---|---|
| Land | $ 50,600 |
| Improvement | 118,600 |
| Total | $169,200. |

The following equalization rates were admitted by respondents:

| Assessment Year | Equalization Rate |
|---|---|
| 1978 | 18.67% |
| 1979 | 17.61%. |

The equalized assessed values were:

| | Land | Building | Total |
|---|---|---|---|
| 1978 | $271,023 | $635,244 | $906,267 |
| 1979 | $287,337 | $673,481 | $960,818. |

Petitioner's expert witness (Robert Marks) employed three comparable land sales to preliminarily determine land value, and an income approach to building value (building residual technique) based on five leases of comparable bowling alley structures (two in Westchester County, two in Nassau County and one in Putnam County). It was Mr. Marks' opinion that the following are the fair market values for the subject property for the years at issue:

| Assessment Year | Land | Improvement | Total |
|---|---|---|---|
| 1978 | $270,000 | $275,000 | $545,000 |
| 1979 | $270,000 | $300,000 | $570,000. |

Respondents' expert witness was David J. Stemper. He also utilized and relied upon comparable land sales and an income approach (building residual technique). However, rather than relying upon comparable leases of other bowling facilities, Stemper cited nine leases, only three of which were bowling alley leases. The remaining six leases were of a supermarket, a former supermarket, a department store, a retail and storage space, a former automobile showroom and a warehouse/office building. Stemper noted that two of his three bowling alley leases "are somewhat dated." In citing his bowling alley leases, he made upward rental adjustments of 70%, 75%, and 150%, respectively. He relied upon and capitalized the estimated income derived from his *non*bowling alley leases. His reason was:

"The 1978 potential gross income for the subject property as a bowling alley facility is estimated at $124,000. The 1978 potential gross income for the subject property for an alternate commercial use is $165,000. Since the expenses would be essentially the same under both uses, it is obvious that the existing bowling alley use is not the highest and best use and, therefore, should not be considered in estimating the Fair Market Value."

Accordingly, he determined the fair market value of the subject property via the income approach (building residual technique) and a market study of land sales (vacant or involving improvements subsequently razed) as follows:

| Year | Land | Improvement | Total |
|------|------|-------------|-------|
| 1978 | $340,000 | $566,000 | $906,000 |
| 1979 | $357,500 | $612,500 | $970,000. |

Stemper also set forth market data based on the sales of four improved properties. His resultant valuations derived from that approach were:

| | |
|------|------|
| 1978 | $1,050,000 |
| 1979 | $1,125,000. |

Stemper's final valuation conclusions blended both approaches:

"The various approaches indicate the following values for the subject.

| | 1978 | 1979 |
|------|------|------|
| "Income Approach | $ 906,000 | $ 970,000 |
| "Market Data Approach | 1,050,000 | 1,125,000 |
| "Est. Fair Market Value | $ 950,000 | $1,025,000". |

In its decision after trial, Special Term adopted petitioner's land value, but determined that respondents' income approach more accurately established the fair market value of the property. Applying the admitted equalization rates to respondents' fair market values resulted in the 1978 assessment being reduced by $50 and the 1979 assessment being sustained. In our opinion, the judgment should be reversed and a new trial granted. In its main brief, petitioner notes that "Appellant [petitioner], respondents and the Court below all agree that the subject property is not a specialty and need not be valued by a cost approach." Further, Special Term correctly noted that "there is nothing in the record before the Court that indicates that this commercial structure could not be used for purposes other than a bowling alley." However, that may be, it is clear to us that while the property is not a specialty and could be converted to an alternate commercial use (see *Matter of Servstation Realty Co. v Board of Assessors of Nassau County,* 56 AD2d 890), the present construction of the building is such that conversion would require a substantial expenditure which would affect the rent that could be derived from the alternate commercial usage (cf. *Matter of Weingarten v Town of Ossining,* 85 AD2d 697 [unimproved land]). The record is devoid of evidence of such costs or the impact of such costs on the profit potential of the subject property. Furthermore, the burden was on the respondents to show that their allegedly comparable lease rentals were in fact comparable. The respondents failed to meet that burden. Consequently, we hold that under all of the circumstances, of this case, and in view of the nature and quality of the evidence presented by petitioner and respondents, there should be a reversal of the judgment and a new trial (see *Matter of BCA-White Plains Lanes v Glaser,* 91 AD2d 633). Titone, J. P., Lazer, Brown and Niehoff, JJ., concur.