**19** In the Matter of BCA-WHITE PLAINS LANES, INC., et al., Appellants, v ELLIOT GLASER, as Assessor of the Town of Greenburgh, et al., Respondents. — In consolidated proceedings pursuant to article 7 of the Real Property Tax Law, petitioners appeal from a judgment of the Supreme Court, Westchester County (Sullivan, J.), entered April 8, 1981, which dismissed the petitions and confirmed the assessments of the subject realty. Judgment reversed, on the law and the facts, without costs or disbursements, and case remitted to Special Term for a new trial, at which the evidentiary matters herein discussed are to receive consideration. The subject property is improved with a 56-lane bowling facility located in the Town of Greenburgh, Westchester County. Petitioners' protests with respect to each year in question are based on claimed overvaluation and inequality. With respect to the issue of inequality, at the beginning of trial, counsel stipulated to the following ratios to be applied to the fair market values as found by the court:

| | |
|---|---|
| 1977: | 34.1% |
| 1978: | 33% |
| 1979: | 33%. |

The assessed values and equalized assessed values were:

| | ACTUAL ASSESSED VALUE | EQUALIZED ASSESSED VALUE |
|---|---|---|
| | | As of 6/1/77 |
| Land | $ 68,350 | $ 198,116 |
| Building | $351,000 | $1,017,391 |
| Total | $419,350 | $1,215,507 |
| | | As of 6/1/78 |
| Land | $ 68,350 | $ 207,121 |
| Building | $351,000 | $1,063,636 |
| Total | $419,350 | $1,270,757 |
| | | As of 6/1/79 |
| Land | $ 68,350 | $ 207,121 |
| Building | $351,000 | $1,063,636 |
| Total | $419,350 | $1,270,757. |

Petitioners' expert found the following fair market values for the property:

| DATE | LAND | IMPROVEMENT | TOTAL |
|---|---|---|---|
| June 1, 1977 | $205,000 | $390,000 | $595,000 |
| June 1, 1978 | $205,000 | $410,000 | $615,000 |
| June 1, 1979 | $205,000 | $420,000 | $625,000. |

Respondents' expert concluded that the fair market values were:

| YEAR | LAND | IMPROVEMENT | TOTAL |
|---|---|---|---|
| 1977 | $410,000 | $840,000 | $1,250,000 |
| 1978 | $430,000 | $845,000 | $1,275,000 |
| 1979 | $450,000 | $825,000 | $1,275,000. |

After trial, Special Term sustained the assessments and dismissed the petitions. Petitioners' expert utilized the income capitalization approach. To derive

his rental value, he reported five leases of bowling alleys and made adjustments to the rentals in those leases. Since he employed the building residual technique of income capitalization, he utilized the market approach to the extent of citing four vacant land sales to determine the value of the subject land as unimproved, and the income attributable to the land. That income was then subtracted from the estimated net income to derive the net income attributable to the building. He did not otherwise use the market approach with the exception of noting a sale of the subject property by the owner to the bowling alley lessee, in September, 1978, at $413,480. He did not report or use the cost approach. Respondents' expert also utilized the income capitalization approach (building residual technique). In contrast to petitioners' citation of five leases — all bowling alleys — respondents' expert reported 13 leases to derive the "Fair Market/Economic Rentals" applicable to the subject property. Those rental values became the bases for his income capitalization computations. However, of the 13 rental comparables, only three were bowling alley properties. The remaining 10 were commercial structures leased and occupied primarily by supermarkets, department stores, large retail stores and offices. Of the three bowling alley comparables selected by respondents' expert, one had an upward "overall factor" adjustment of 55% another 80% and the third 180%. Utilizing 13 rental comparables so heavily weighted with supermarket, department store and large retail store leases, respondents derived (via the income capitalization approach) the following values:

| 1977: | $1,235,000 |
| 1978: | $1,235,000 |
| 1979: | $1,250,000. |

He then correlated his income capitalization values with the market data approach to the extent of reporting and giving some consideration to a sale, in 1979, of an improved property, the Elmsford Bowling Lanes. His final conclusions of market value (1977: $1,250,000; 1978 and 1979: $1,275,000) are all in excess of the equalized assessed values and greatly in excess of the fair market values reported by petitioners' expert. Petitioners' expert noted that "[t]he interiors [of bowling alley structures] are built to accommodate the personalty and fixtures that are necessary for the conduct of that business." The building on the subject property has two stories and a basement. It was constructed as a bowling center and completed in 1960. At the time of the trial (in 1980) it had been continuously utilized as a bowling center throughout its 20-year existence. The ceiling height of the lobby area, which extends almost the width of the building, is two stories high. Respondents' expert described the roof as "domed". He conceded that buildings constructed for bowling alley operations are placed on concrete, and on top of the concrete, piers are placed to provide a space for ball returns beneath the level of the alley. There is an open area, or void, of approximately one to one and a half feet beneath the wood of the 28 lanes on each of the upper and lower levels. It is thus manifest that were the building to be converted from bowling alley use to supermarket, department store, large retail store or office building use, there would be a one and one-half foot depression in the area where the bowling alleys had been. It is obvious from the respective experts' descriptions of the building that: the heating and air-conditioning systems are installed in the domed roof rather than upon a flat roof; the building is constructed without windows on three sides; it has only one main entrance; and it does not have any overhead doors, loading docks or similar facilities as would be found in supermarkets, department stores or large retail structures. Subdivision 1 of section 302 of the Real Property Tax Law provides that: "The taxable status of real property in cities and towns shall be determined annually as of the first day of May. All real

property shall be assessed in the city or town in which it is situated *according to its condition and ownership as of such date*" (emphasis supplied). By utilizing an inordinately large number of nonbowling alley rentals as comparables, and not making an adjustment or allowance for the necessary costs of conversion of the subject bowling alley to those other uses, respondents' expert obtained inflated rental values for capitalization purposes and violated the rule that all real property be assessed accordingly to its condition as of the taxable status date. As succinctly stated in *Matter of Addis Co. v Srogi* (79 AD2d 856, 857, mot for lv to app den 53 NY2d 603): "Respondent's next claim that the trial court erred in valuing the property at 155 East Onondaga Street on the basis of the building's existing use is without merit. Although the appraisers for the respective parties both agreed substantially that the 'highest and best use' of the building was for reconversion to a multifamily dwelling, the trial court correctly concluded that the fair market value of this building should be determined in reference to its existing use. Property is assessed for tax purposes according to its condition on the taxable status date, without regard to future potentialities or possibilities and may not be assessed on the basis of some use contemplated in the future (*Matter of Kalski v Fitzgerald*, 25 AD2d 573, 574; 58 NY Jur, Taxation, §§ 203, 281; see, also, *Matter of Allied Stores of N.Y. v Finance Administrator of City of N.Y.*, 76 AD2d 835)." Further, on the evidence presented, there is doubt as to whether the town's zoning ordinance would permit a supermarket or department store use on the subject property. On the facts of this case, it was the respondents who had the burden of proving that their alleged rental comparables were in fact comparable, and they failed to meet their burden. Petitioners, however, erred at the opposite end of the spectrum. By limiting their rental comparables to five bowling alley leases, they treated the property as if it were suited only for bowling alley use, an assumption not warranted by the evidence (see *Matter of Servstation Realty Co. v Board of Assessors of Nassau County*, 56 AD2d 890). Thus, both sides were under a misapprehension and erred in their valuation approaches. We further find that respondents' Elmsford Bowling Lanes sale comparable is insufficient and inadequate to alone sustain the assessments. Under all of the circumstances, justice requires that there be a new trial (see *Matter of Pepsi Cola Co. v Tax Comm. of City of N.Y.*, 19 AD2d 56). Titone, J. P., Lazer, Brown and Niehoff, JJ., concur.