*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0391P (6th Cir.)
File Name: 01a0391p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: FEDERATED
DEPARTMENT STORES, INC.
(A & S GALLERIA REAL
ESTATE, INC.),
            *Debtor.*

_____

CITY OF WHITE PLAINS, NEW
YORK,
      *Plaintiff-Appellant,*

     *v.*

A & S GALLERIA REAL
ESTATE, INC.,
      *Defendant-Appellee.*

Nos. 99-4247;
00-3817

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati and
Appeal from the Bankruptcy Appellate Panel
of the Sixth Circuit.

No. 98-00543—Sandra S. Beckwith, District Judge.
No. 90-10130—Burton Perlman, Bankruptcy Judge.

Argued: April 24, 2001

1

Decided and Filed:  November 6, 2001

Before:  BOGGS and CLAY, Circuit Judges; GWIN,
District Judge.*

---------------------

**COUNSEL**

**ARGUED:**  John Arthur Schuh, SCHUH & GOLDBERG,
Cincinnati, Ohio, for Appellant.  Todd S. Swatsler, JONES,
DAY, REAVIS & POGUE, Columbus, Ohio, for Appellee.
**ON BRIEF:**  John Arthur Schuh, SCHUH & GOLDBERG,
Cincinnati, Ohio, for Appellant.  Todd S. Swatsler, JONES,
DAY, REAVIS & POGUE, Columbus, Ohio, for Appellee.

---------------------

**OPINION**

---------------------

GWIN, District Judge.  With these appeals, consolidated
for purposes of decision, the Court is asked to decide whether
certain real property taxes are properly considered
administrative expenses under 11 U.S.C. § 503(b)(1)(B)(i) of
the Bankruptcy Code.  The Court is also asked to decide
whether New York law creates an interest in property under
11 U.S.C. § 546(b)(3) on its tax status date.

At the bankruptcy court, the Plaintiff-Appellant City of
White Plains (the "City"), filed a claim to collect back real
property taxes from Defendant-Appellee A&S Galleria Real
Estate, Inc. ("A&S Galleria").  In its claim, the City said the
back property taxes were an administrative expense entitled
to priority.  Alternatively, the City argued that if the back
taxes were not an administrative expense, the taxes should

---
*    The Honorable James S. Gwin, United States District Judge for the
Northern District of Ohio, sitting by designation.

IV.

The second appeal before the Court was alternative, based upon a possibility that the property taxes were not allowable as administrative expenses. At oral argument both parties agreed that in the event we found the taxes to be collectable as an administrative expense, as we have done, then this alternative question should not be answered. Thus, we express no opinion as to whether an interest in property under 11 U.S.C. § 546(b)(3) is created under New York law as of the tax status date.

The judgment of the U.S. District Court for the Southern District of Ohio in case 99-4247 is **REVERSED**. The appeal from the Bankruptcy Appellate Panel for the Sixth Circuit in case 00-3817 is **DISMISSED**.

receive priority as a prepetition interest in the real property that was capable of being perfected postpetition by operation of a generally applicable state law.

The U.S. Bankruptcy Court for the Southern District of Ohio denied the City's application to have the taxes paid as administrative expenses under 11 U.S.C. § 503(b)(1)(B)(i) by operation of 11 U.S.C. § 507(a)(8)(B). The U.S. District Court for the Southern District of Ohio affirmed the decision. The bankruptcy court also held that the City did not have a prepetition interest subject to postpetition perfection in the real property taxes. The Bankruptcy Appellate Panel of the Sixth Circuit affirmed that decision.

The City now appeals the district court's affirmation of the bankruptcy court's denial of its back taxes as an administrative expense. The City also appeals the bankruptcy appellate panel's affirmation of the bankruptcy court's denial of the City's claim that the taxes were a prepetition interest in the real property subject to being perfected postpetition.

Because the City "assessed" the taxes within the meaning of 11 U.S.C. § 508(a)(8) after the debtor's bankruptcy petition was filed, the Court finds the debtor's estate "incurred" the property taxes. Because the debtor's estate, not the debtor, incurred the property taxes, we find that the taxes should be paid as an administrative expense. We **REVERSE** the district court's order denying payment of the back taxes as an administrative expense. Because the back taxes are properly paid as an administrative expense, we do not reach the issue of whether the City had a prepetition interest in the taxes.

I.

This case centers on the determination of what date, under the Bankruptcy Code, the City "assessed" the real property taxes under its taxing process and the debtor's estate "incurred" those taxes. Because the date when the real property taxes were "incurred" and "assessed" is critical, the temporal relationship between events in the City's taxing

process and the filing of the bankruptcy petition is important in deciding whether the City assessed the tax before the commencement of the case under 11 U.S.C. § 507(a)(8)(B).[1]

The City and the City of White Plains School District (the "School District") use similar tax assessment procedures. The City and the School District utilize a fiscal year that runs from July 1 of each year to the following June 30. Under New York law, city taxing authorities use March 1 as the taxable status date, except when a city's or town's local law sets a different date. *See* N.Y. Real Prop. Tax Law § 302(1). With this flexibility, White Plains uses a different taxable status date. White Plains City Charter § 74(b) sets the taxable status date for real property within its boundaries. "Real property in the city shall be assessed according to its condition and ownership as of January 1st of each year." White Plains, N.Y. Code § 74(b). Under this provision, a property's taxable status is determined by reference to its condition and ownership on January 1, regardless of whether the property is sold or destroyed after that date.

On January 1 of each year, the City files its tentative assessment roll. *See* White Plains, N.Y. Code §§ 74(b)&(c). After notice and the opportunity to challenge the assessed values, the City certifies its assessment roll, including any changes, and files the assessment roll with the city clerk by March 1. *See* White Plains, N.Y. Code §§ 74(d)–(h).

The City enacts its budget on or before May 30. *See* White Plains, N.Y. Code § 65(5)(B). Concurrently with passing a budget, the City causes sufficient money "to be levied and raised by general tax on all taxable property in the city, according to the valuation upon the assessment roll for the

---

[1] Section 507(a)(8)(B) is the current section of the Bankruptcy Code relevant to this appeal. However, on the bankruptcy petition filing date at issue in this case, § 507(a)(7)(B) was the relevant section. The text of the two sections is identical. For ease of reference the Court will refer to § 507(a)(8)(B) in its discussion.

of § 507(a)(8). *See Bankruptcy Law and Practice* § 42:39. However, the Court need not attempt to discern what Congress meant by "arise," as the plain language of § 502(i) precludes it from applying to the taxes in the instant case.

For a tax claim to be treated as arising prepetition under § 502(i), a claim must first be eligible for eighth priority under § 507(a)(8). To be awarded eighth priority, a claim must be assessed prepetition. The property taxes in this case were clearly not assessed prepetition. Thus they cannot be considered filed prepetition under § 502(i). *See, e.g.*, *In re Garfinckels*, 203 B.R. at 819.[8]

The property taxes that the City seeks to collect were assessed after the commencement of the case under § 507(a)(8)(B). Therefore, the taxes are not excluded from consideration as administrative expenses under § 503(b)(1)(B)(i).

---

[8] The court in *Perpetual American Bank v. District of Columbia* (*In re Carlisle Court, Inc.*), 36 B.R. 209 (Bankr. D.D.C. 1983) further reasoned:

> If § 502(i) is read to relegate all post-petition tax claims of the kind described in § 507(a)([8]) to pre-petition status, . . . the statutory language in § 503(b), excluding taxes of a kind specified in § 507(a)([8]) and denying them administrative priority, becomes meaningless and [such a reading] would appear to be in clear conflict with § 503(b)(1)(B).

36 B.R. at 217 (citations omitted). We agree that interpreting § 502(i) to require that all potential postpetition claims under § 507(a)(8) be determined prepetition would clearly conflict with the plain meaning of § 503(b)(1)(B).

"assessed on all real estate in the city" on May 21, 1990, when the Common Council of White Plains adopted the city's budget for the upcoming fiscal year beginning July 1, 1990. Although the valuation process was underway two weeks prior to the filing of the bankruptcy petition, New York laws did not impose personal liability for the taxes on the debtor until months after the City filed the petition. Therefore, the property taxes at issue in this case were not assessed before commencement of the case under § 507(a)(8)(B). The property taxes are collectable by the City as an administrative expense.

Furthermore, the district court's reliance on the Bankruptcy Code's definition of "claim" was also misplaced. A claim arises only when an entity has a "right to payment." 11 U.S.C. § 101(5)(A). In this case, the government entities did not have a right to payment from the owners of the property at issue until the taxes were levied. At the time the taxes were levied, the debtor's estate was responsible for the property. The bankruptcy reorganization plan clearly states that governmental entities seeking payment of taxes from the debtor's estate are not required to file claims. Therefore, the City was not obligated to file claims with the debtor's estate to preserve its claim for the taxes.

Finally, § 502(i) does not impact our analysis. Section 502(i) provides:

A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(8) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

11 U.S.C. § 502(i). Congress's intent in enacting § 502(i) was to give eighth priority status to claims that arise after the filing of a bankruptcy petition, but otherwise meet the criteria

budget year," so that the budget is balanced. White Plains, N.Y. Code § 68(5)(D). In this case, the City adopted its budget on May 21, 1990.

Of the taxes levied when the budget is adopted, one-half of the tax is due on July 1, the start of the fiscal year. The remaining one-half of the taxes are due on January 1 of the following year. White Plains, N.Y. Code § 84. The taxes become liens on the real estate when they become due and payable. *Id.* Monthly interest at 1.5 percent begins to accrue on any unpaid tax thirty days after it is due. *See* White Plains, N.Y. Code § 86.

The real property tax is both an "in rem" and "in personam" obligation. The in rem nature of the tax is clear: "All assessments shall be against the real property itself which shall be liable to sale pursuant to law for any unpaid taxes or special ad valorem levies." N.Y. Real Prop. Tax Law § 304(1). New York law also establishes the tax as an in personam tax. "The owner of real property . . . shall be personally liable for the taxes levied thereon." N.Y. Real Prop. Tax Law § 926.

The School District uses a similar procedure. A separate tax for the School District situated within the City "shall be ascertained from the latest final assessment rolls of the city or town." N.Y. Real Prop. Tax Law § 1302(1). The School District also uses a fiscal year running from July 1 to the following June 30. The School District uses the same tax status date adopted by the City. *See* N.Y. Real Prop. Tax Law § 1302(3).

The school tax comes into being when voted by the School District. *See* N.Y. Real Prop. Tax Law § 1306. In this case, the School District voted the tax on June 18, 1990. Immediately upon voting a tax, "the school authorities shall levy it, make out a school tax roll therefore and annex thereto a warrant." *Id.* The school tax becomes a lien when adopted by the School District. *See* N.Y. Real Prop. Tax Law § 1312.

The taxes are payable in installments and if not paid before the date when due, interest is "included in and deemed part of the unpaid tax." N.Y. Real Prop. Tax Law § 1326.

As is the case with the city taxes, the school tax is also both in rem and in personam. The levy of school taxes "shall be deemed as against the real property itself." N.Y. Real Prop. Tax Law § 1308. The in personam nature of the tax exists because the owner of real property is personally responsible for *any* tax levied against that property. *See* N.Y. Real Prop. Tax Law § 926.

On January 15, 1990, A&S Galleria filed a Chapter 11 bankruptcy petition for relief. The bankruptcy court established August 1, 1990, as the claims bar date. The City filed a timely proof of claim for certain taxes and water charges. The debtor's estate paid these claims following plan confirmation. The City did not file a proof of claim for the city and school taxes at issue in this appeal. The City argues the taxes were administrative expenses for which no proof of claim was required.[2] Certain county taxes arising from the same assessment roll as the taxes at issue were paid postpetition by the debtor's estate without proof of a claim having been filed for them.

On August 12, 1997, the City filed a motion to recover the city and school taxes as an administrative expense claim under 11 U.S.C. § 503(b)(1)(B)(i).[3] The City argued the taxes

---

[2] The bankruptcy reorganization plan provided that "[h]olders of Administrative Claims based on liabilities incurred by a Debtor in the ordinary course of its business (including Administrative Claims of governmental units for taxes) shall not be required to File or serve any request for payment of such Claims." Third Amended Plan of Reorganization, Art. III § A(1)(g)(ii)(II).

[3] (b) After notice and a hearing, there shall be allowed administrative expenses, . . . , including—

. . .

(1)(B) any tax—

In turn, the City argues that "assessed" under § 507(a)(8)(B) has the same meaning as "incurred" under § 503(b)(1)(B)(i). This position has been adopted by a few courts. *See, e.g., In re Garfinckels*, 203 B.R. at 818–19 (noting that the critical focus under § 507(a)(8)(B) is when the property inescapably becomes subject to the tax as this interpretation preserves Congress's intent that the debtor's estate be liable only for those taxes the estate incurred); *In re Prairie Mining, Inc.*, 194 B.R. 248, 257 (Bankr. D. Kan. 1995) ("[T]he Court is convinced that Congress intended for all property taxes coming due postpetition to qualify for either the first or eighth priority. This purpose is best served by construing 'incurred' in § 503 to mean the same thing as 'assessed' in § 507(a)(8)(B).").

We believe the positions taken by the district court and the City with respect to the definition of "assessed" are essentially the same. As detailed in the previous part, an expense is incurred when it accrues and liability is fixed. For all practical purposes, when "liability is fixed" is the same event as the district court's holding that a tax is "assessed" when "the entity is made liable for [the tax]." The district court held against the City because it misinterpreted New York law by finding that the debtor became personally liable for the tax on January 1, 1990.

As previously discussed, under New York law, an owner of property does not become liable for real property taxes on the tax status date. Rather, on that date the value and the taxability of the property is established. Personal liability for the tax does not occur until the taxes are levied. *See* N.Y. Real Prop. Tax Law § 926.

The taxes, however, were not levied until certain required actions were conducted by the governmental units with respect to the budget for the upcoming fiscal year. Thus, the school tax in this case was levied and a warrant for its collection issued on June 18, 1990, for the fiscal year beginning July 1, 1990. Similarly, the city property tax was

One school of thought is in line with the position essentially espoused by [the City]: A tax is not "assessed" within the meaning of § 507(a)(8) until all things necessary to create the tax liability have occurred—determination of the property's value, determination of applicable tax rate, and attachment of a lien on the property. The other school of thought, and the one adopted by the Court here, is that a tax is "assessed" on the date the entity is made liable for it, regardless of when the tax is calculated and due.

*City of White Plains v. A&S Galleria Real Estate, Inc.* (*In re Federated Dep't Stores, Inc.*), No. C-1-98-543, at 10 (S.D. Ohio Sept. 13, 1999) (citations omitted).

The district court cited several cases that adopted the same definition of "assessed" that it did. The district court noted that those cases found it relevant that the governmental entities involved could have preserved their right to payment by filing a claim for a contingent, unliquidated amount under the definition of "claim" in the Bankruptcy Code.[7]

The district court went on to hold that, under New York law, because A&S Galleria was liable for the property taxes on January 1, 1990, the taxes were assessed prepetition and were not an expense of the debtor's estate. The district court concluded that while the exact amount of the taxes was not known on the bankruptcy petition date, the taxes were a contingent liability of A&S Galleria and therefore a contingent, unliquidated claim of the City.

---

[7] Section 101(5)(A) of the Bankruptcy Code provides:

"claim" means . . . right to payment, whether or not such a right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]

11 U.S.C. § 101(5)(A).

---

were incurred by the debtor's estate under § 503(b)(1)(B)(i) because the taxes in question were not "assessed," according to § 507(a)(8)(B),[4] until after the bankruptcy petition was filed. Concurrent with the filing of the motion to recover the taxes as an administrative expense, the City instituted an adversary proceeding in bankruptcy court. In the adversary proceeding, the City took the alternative position that if the taxes were not administrative expense claims because of prepetition assessment, then the City had an interest in the real property capable of postpetition perfection by a lien on the property from which the claims arose. *See* 11 U.S.C. §§ 362(b)(3), 546(b)(1)(A).

The bankruptcy court held that under § 507(a)(8), the City assessed the taxes prepetition. Because it found that the taxes were assessed prepetition, the bankruptcy court held that the taxes were not administrative expense claims under § 503(b)(1)(B)(i).

The district court disagreed with the bankruptcy court's holding on the meaning of "assessed," but affirmed the decision on other grounds. The district court held that a tax is "assessed" on the date an entity is made liable for it, regardless of when the tax is calculated and due. Interpreting New York law, the district court held that A&S Galleria was liable for the tax on the tax status date of January 1, 1990. Because it found that the debtor was liable for the tax on the

---

[4] (i) incurred by the estate, except a tax of a kind specified in section 507(a)(8) of this title.

11 U.S.C. § 503(b)(1)(B)(i).

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

. . .

(B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition.

11 U.S.C. § 507(a)(8)(B).

tax status date of January 1, 1990, the district court found the taxes were prepetition debts and not an administrative expense under § 503(b)(1)(B)(i).

With respect to the alternative claim, the bankruptcy court held that the City did not have a prepetition interest in the real property that could be perfected postpetition. In reaching its decision, the bankrupcty court acknowledged that the U.S. Courts of Appeals for the Second and Third Circuits have reached different conclusions on the same issue of New York law. *Compare Lincoln Sav. Bank v. Suffolk County Treasurer* (*In re Parr Meadows Racing Ass'n, Inc.*), 880 F.2d 1540 (2d Cir. 1989) *with Makoroff v. City of Lockport*, 916 F.2d 890 (3d Cir. 1990). The bankruptcy court adopted the Third Circuit's reasoning in *Makoroff* and held that on the tax status date, the City did not have an interest in the real property allowing postpetition perfection of that interest into a lien under § 546(b)(1)(A).

The Bankruptcy Appellate Panel for the Sixth Circuit affirmed the bankruptcy court's decision. It found that *Makoroff* was the better reasoned decision.

The City now appeals the rulings of the district court and the bankruptcy appellate panel.

## II.

"We review a bankruptcy appeal differently than a typical appeal from the district court. The bankruptcy court makes initial findings of fact and conclusions of law. The district court then reviews the bankruptcy court's findings of fact for clear error and the bankruptcy court's conclusions of law de novo." *Wesbanco Bank Barnesville v. Rafoth* (*In re Baker & Getty Fin. Servs. Inc.*), 106 F.3d 1255, 1259 (6th Cir. 1997) (citing Fed. R. Bankr. P. 8013). We review the factual findings of the bankruptcy court for clear error and review the district court's conclusions of law de novo. *Unsecured Creditor's Comm. of Highland Superstores, Inc. v. Strobeck*

While many states define assessment, it is federal law that determines what actions constitute an assessment under § 507(a)(8)(B). *In re Garfinckels*, 203 B.R. at 817 (citing *King v. Franchise Tax Bd.* (*In re King*), 961 F.2d 1423, 1426 (9th Cir. 1992)).

In interpreting "assessed" under § 507(a)(8)(B), the bankruptcy court merely imported New York's definition of the term. In finding this wrong, the district court correctly determined that simply importing a state's definition is inappropriate. Because states have varying definitions of "assessed," the use of different definitions while interpreting § 507(a)(8)(B) would destroy the uniformity of the statute.[6]

In reaching its decision on the meaning of "assessed" under § 507(a)(8)(B), the district court recognized a split of authority on the issue:

---

valuation and appraisal of property, usually in connection with listing of property liable to taxation, and implies the exercise of discretion on the part of officials charged with duty of assessing, including the listing or inventory of property involved, determination of extent of physical property, and placing of a value thereon. To adjust or fix the proportion of a tax which each person, of several liable to it, has to pay; to apportion a tax among several; to distribute taxation in a proportion founded on the proportion of burden and benefit. To calculate the rate and amount of taxes. To levy a charge on the owner of property for improvements thereto, such as for sewers or sidewalks.
"Assess" is sometimes used as synonymous with "levy."

Black's Law Dictionary 116 (6th ed. 1990).

[6] We also reject New York's definition of "assessment" as the proper meaning under § 507(a)(8)(B) because the section applies to "a property tax assessed before the commencement of the estate." In interpreting this phrase it is crucial that "assessed" applies to the property tax itself, not the property the tax is assessed against. Thus, we interpret "assessed" to apply to the taxpayer's responsibility to pay the tax, not to when the property's value is determined. *See, e.g.*, *In re Garfinckels*, 203 B.R. at 817–18.

did not acquire an in personam right to payment from the debtor. *See* N.Y. Real Prop. Tax Law § 304(1) ("All assessments shall be against the real property itself which shall be liable to sale pursuant to law for any unpaid taxes . . . .").

The City did not acquire an in personam claim against A&S Galleria on January 1, 1990. Not until the postpetition levy did the City acquire a right to payment from the debtor's estate. *See* N.Y. Real Prop. Tax Law § 926(1) ("The owner of real property . . . shall be personally liable for the taxes levied thereon."). The right to payment remained unmatured until July 1, when the taxes became due and payable. At the time the levy took place, the debtor's estate oversaw the property and is therefore responsible for paying the tax. Thus, the tax was incurred by the estate for purposes of § 503(b)(1)(B)(i).

B. "Assessed" under § 507(a)(8)(B)

We next must decide if the property taxes at issue are the kind specified in § 507(a)(8), that is, whether the claim is for "a property tax assessed before the commencement of the case." 11 U.S.C. § 507(a)(8)(B). If so, the taxes are not administrative expenses.

There has been a great deal of confusion in determining Congress's meaning of "assessed" under § 507(a)(8)(B). "Assessed" has many different meanings and can refer to nearly every step in the process of imposing a property tax.[5]

---

[5] Black's Law Dictionary defines "assess" as:

    To ascertain; fix the value of. To fix the amount of the damages or the value of the thing to be ascertained. To impose a pecuniary payment upon persons or property. To ascertain, adjust, and settle the respective shares to be contributed by several persons toward an object beneficial to them all, in proportion to the benefit received. To tax.

    In connection with taxation of property, means to make a

---

*Real Estate* (*In re Highland Superstores, Inc.*), 154 F.3d 573, 576 (6th Cir. 1998).

With regard to the City's appeal as to whether it had a prepetition interest in the taxes, "[w]hether an appeal comes to our court by way of a district court or the [bankruptcy appellate panel], our review is of the bankruptcy court's decision." *Koenig Sporting Goods v. Morse Rd. Co.* (*In re Koenig Sporting Goods, Inc.*), 203 F.3d 986, 988 (6th Cir. 2000) (quoting *Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693, 696 n.1 (6th Cir. 1999)). As before the district court and the bankruptcy appellate court, a bankruptcy court's conclusions of law are reviewed de novo. *In re Highland Superstores, Inc.*, 154 F.3d at 576.

III.

Section 507 of the Bankruptcy Code gives priority to certain unsecured claims of creditors. The Bankruptcy Code gives a first priority to the administrative expenses necessary to preserve the debtor's estate during the bankruptcy. *See* 11 U.S.C. § 507(a)(1).

Administrative expenses include "any tax . . . incurred by the estate, except a tax of a kind specified in section 507(a)(8) of this title." 11 U.S.C. § 503(b)(1)(B)(i). Claims for administrative expenses under § 503(b) are strictly construed because priority claims reduce the funds available for creditors and other claimants. *In re Alumni Hotel Corp.*, 203 B.R. 624, 630 (Bankr. E.D. Mich. 1996) (citing *Mfrs. Hanover Trust Co. v. Bartsh* (*In re Flight Transp. Corp. Sec. Litig.*), 874 F.2d 576, 581 (8th Cir. 1989)).

In determining whether a claim is a valid administrative expense, a court must decide (1) whether the taxes were "incurred" by the estate and (2) whether the taxes are of a kind specified in § 507(a)(8). *See Marion County Treasurer v. Blue Lustre Prods., Inc.* (*In re Blue Lustre Prods., Inc.*), 214 B.R. 188, 189 (S.D. Ind. 1997).

Section 507(a)(8)(B) gives an eighth priority to property taxes "assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition." 11 U.S.C. § 507(a)(8)(B). If a tax qualifies for the eighth priority under § 507(a)(8), it is disqualified from the first priority accorded to administrative expenses.

The two-prong standard of § 503(b)(1)(B)(i) has been difficult to use, primarily because the tests under the two prongs uses two different key words— "incurred" and "assessed"—which are not necessarily mutually exclusive. As one commentator has noted:

> Depending on the characterization of when a tax is "incurred" and "assessed," it is possible that under a strict reading of the Code, a tax could be incurred *before* bankruptcy, and thus be ineligible for first priority treatment, but not be assessed until *after* bankruptcy, and thus be disqualified as a[n eighth] priority.

2 William L. Norton, *Bankruptcy Law and Practice 2d* § 42:39 (2d ed. 2001) (emphasis added) [hereinafter *Bankruptcy Law and Practice*].

We first look at whether the debtor's estate "incurred" the property taxes according to § 503(b)(1)(B)(i). If the estate incurred the taxes, we then decide whether the taxes were "assessed" within the meaning of § 507(a)(8).

A. "Incurred" by the Estate under § 503(b)(1)(B)

State law determines when a tax is incurred. *W. Va. Dep't of Tax & Revenue v. IRS* (*In re Columbia Gas Transmission Corp.*), 37 F.3d 982, 984 (3d Cir. 1994) (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979)). In affirming the bankruptcy court's decision, the district court held that New York law imposed liability for the property taxes on the tax status date. Because the district court found the liability for taxes arose on the tax status date,

to mature on the tax due date. But nothing in *Parr Meadows* suggests that *in personam* rights against the taxpayer—as opposed to *in rem* rights against the property—are in any way acquired, or arise, on the tax status date. If the Debtors had sold the real property in question between the tax status date and the bankruptcy filings, there is no question but that the City would have retained a lien on the property notwithstanding the change in ownership; but there is equally no question but that the City would not have had even an arguable claim against the Debtors personally for payment of real property taxes due for a period subsequent to their ownership . . . [I]t is ownership of the real property subject to taxation during the period with respect to which taxes are imposed that gives rise to the personal obligation to pay the tax, and that situation cannot arise until the tax due date.

*In re R.H. Macy*, 157 B.R. at 553–54 (citations and footnote omitted); *see also In re Garfinckels, Inc.*, 203 B.R. 814, 819 (Bankr. D.D.C. 1996) (holding that Maryland property tax law, which has a similar timetable as New York property tax law, causes taxes to be incurred within the meaning of § 503(b)(1)(B) on the taxes' due date, when a tax lien first attaches and liability is first imposed).

The present case is essentially identical to the situation in *In re R.H. Macy*. The property at issue was tentatively valued on January 1, 1990, the tax status date. However, the final value of the property was not set until March 1, 1990, and the taxes were not levied for the city until May 21, 1990, and for the school until June 18, 1990. Until the City levied the taxes, it had merely a vested in rem interest in the real property. While the property would be taxable according to its condition on January 1, 1990, the property owner would not be personally liable for the taxes if the property was transferred to a third party before the taxes were levied. While the City acquired an in rem interest, a "right to payment" from the real property itself on January 1, 1990, it

5/90 & 6/90  Taxes are levied
7/90  First installment of tax is due and payable
7/90  Tax year begins
1/91  Second installment of tax is due and payable
6/91  Tax year ends

If the tax liability of the owner is imposed on the tax status date as the district court and the appellee say it is, then an owner of property on the tax status date is liable to pay property taxes on real property for a fiscal year not yet begun, on property it will not own either on the date the taxes are levied or on the date the taxes are due and payable. Neither the district court nor the appellee provide any authority that supports this proposition.

Other courts have reached the same conclusion that we reach today. In *In re R.H. Macy & Co.*, 157 B.R. 548 (S.D.N.Y. 1993), the district court interpreted New York law and reversed the bankruptcy court's decision that the city's claim for administrative expenses had arisen on the tax status date. The district court reasoned:

> While the City, under *Parr Meadows* acquired an "interest" in the real property in question on the tax status date, January 5, 1992, it is hard to see how the tax itself can be said to have been "incurred" before July 1, 1992, the beginning of the tax year, before which date the Debtors were under no obligation to pay real property taxes. To "incur" means to "become liable or subject to.". . . Plainly, Debtors were not "liable or subject to" . . . the real property taxes at issue prior to the bankruptcy filing dates.
> . . . .
> . . . [T]he distinction between rights *in rem* and rights *in personam* must be borne in mind. As *Parr Meadows* teaches, on the tax status date a taxing authority acquires an interest in real property leading to *in rem* rights against the property for taxes becoming due in the ensuing tax year, so that an *in rem* right can be said

the district court found that the taxes were a claim against prepetition debtor A&S Galleria and not incurred by the debtor's estate.

Before turning to New York law to determine the date on which the property taxes were incurred, we describe what the Bankruptcy Code means by "incurred." The Bankruptcy Code does not define when property taxes are "incurred" by a debtor's estate. However, most courts considering the issue have found that a tax is incurred when it accrues and becomes a fixed liability. *See Bankruptcy Law and Practice* § 42:19; *see also In re Columbia Gas Transmission Corp.*, 37 F.3d at 985–86; *Midland Cent. Appraisal Dist. v. Midland Indus. Serv. Corp. (In re Midland Indus. Serv. Corp.)*, 35 F.3d 164, 166–67 (5th Cir. 1994); *In re Soltan*, 234 B.R. 260, 271 (Bankr. E.D.N.Y. 1999) ("The significant event is the date the tax accrues and becomes a fixed obligation."); *In re Blue Lustre Prods.*, 214 B.R. at 190 (stating "for purposes of section 503(b)(1)(B)(i), a property tax is incurred as soon as the tax accrues and the debtor is liable for the tax"); *In re Northeastern Ohio Gen. Hosp. Assn.*, 126 B.R. 513, 515 (Bankr. N.D. Ohio 1991) ("For purposes of administrative expense allowance, a tax claim is incurred on the date it accrues rather than the date it is assessed or becomes payable."). A tax obligation accrues when the event triggering liability occurs. *See In re Midland Indus. Serv.*, 35 F.3d at 167.

Using this standard for "incurred," the district court erred when it held that New York law imposed liability for property taxes on the tax status date. In finding that taxes were incurred on the January 1 tax status date, the district court relied on *Spiegel v. Board of Assessors*, 555 N.Y.S.2d 811, 811–12 (App. Div. 1990). In *Spiegel*, fire destroyed property after the tax status date but before the final assessment role was prepared. The *Spiegel* court held that the value of real property was to be assessed based on its condition and ownership at the time of the tax status date and was not modified by the subsequent fire. *Spiegel*, 555 N.Y.S.2d at

812.  In this case, the district court misinterpreted *Spiegel* as holding that New York law imposes liability for the taxes on the prepetition debtor even if the property in question is sold to a third party subsequent to the tax status date.

Likewise, the appellee also misinterprets New York law when it asserts that *Spiegel*, along with *BCA-White Plains Lanes, Inc. v. Glaser*, 457 N.Y.S.2d 299 (App. Div. 1982) and *Hunter College Student Social Community & Religious Clubs Ass'n v. City of New York*, 63 N.Y.S.2d 337 (Sup. Ct. 1946), hold that the tax status date fixes tax liability based on ownership regardless of whether the property is subsequently sold.

Neither *Spiegel* nor *BCA-White Plains Lanes* hold only that real property's value and taxability is assessed based on its condition on the tax status date. *See Spiegel*, 555 N.Y.S.2d at 812; *BCA-White Plains Lanes*, 457 N.Y.S.2d at 302.  The assessed value does not change even if improvements on the property are destroyed after the tax status date.  *See Spiegel*, 555 N.Y.S.2d at 812.  In *Spiegel*, the owner of the property on the tax status date paid the disputed taxes.  However, that is because the owner kept the property during the entire tax year at issue.  Neither *Spiegel* nor *BCA-White Plains Lanes* addressed whether a property owner is liable for the taxes assessed on the tax status date if the ownership of the property changed.

In *Hunter College*, the court found that the ownership of property on the tax status date determines whether real property is exempt from taxes. *See Hunter Coll.*, 63 N.Y.S.2d at 346; *see also County of Suffolk v. Grumman Aerospace Corp.*, 694 N.Y.S.2d 903, 905 (Sup. Ct. 1999) ("The well-established rule is that ownership of real property on the taxable status date determines whether the property is subject to real property taxation for the ensuing year.").  The identity of the owner on the tax status date determines whether the property is exempt from property taxes for the upcoming year.

None of these decisions relied upon by the district court hold that the owner of property on the tax status date is personally liable to pay taxes for the tax year beginning six months into the future.  Instead, these cases hold that the taxability and valuation, but not personal liability, are determined on the tax status day, subject to a challenge.

The White Plains City Charter only calls for property to be "assessed" according to its condition and ownership.  *See* White Plains, N.Y. Code § 74(b).  Under New York law, "assessment" means that a determination is made of "(1) the valuation of real property, including the valuation of exempt real property and (2) whether or not real property is subject to taxation or special ad valorem levels."  N.Y. Real Prop. Tax Law § 101(2).

The cases cited by the district court and appellee only confirm that the value and taxability of real property are established on the tax status date.  Liability for the property taxes assessed on the tax status date is not determined on that date.

For example, tax exempt organizations that purchase property after the tax status date are still responsible for the property taxes assessed on that property.  *See Long Island Power Auth. v. Shoreham-Wading River Cent. Sch. Dist.*, 88 N.Y.2d 503, 512, 670 N.E.2d 419, 422 (1996) (citing *Lutheran High Sch. Ass'n v. City of New York*, 288 N.Y.S.2d 855, 856 (App. Div. 1968)); *Young Israel of Far Rockaway, Inc. v. City of New York*, 305 N.Y.S.2d 432, 432 (App. Div. 1969).  This result is only possible if an owner's liability for real property taxes is not set on the tax status date.

The error in the district court's and appellee's interpretation of New York law is highlighted by the following hypothetical:

1/1/90  Property owned by the prepetition debtor on tax status date
1/15/90  Bankruptcy filing
**4/90  Debtor sells the real estate to a third party**