### In re David R. BLURTON and Virginia E. Blurton, Debtors.

### No. 99–11909.

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

Dec. 13, 2005.

---

**604**

Jerome Teel, for debtors.

Marianna Williams, Ashley, Ashley & Arnold, Dyersburg, Tennessee, Chapter 7 Trustee.

J. Steven Wilkes, Office of the United States Trustee.

## MEMORANDUM OPINION AND ORDER RE: (1) DEBTORS' MOTION TO ALLOW ADMINISTRATIVE CLAIM, (2) CHAPTER 7 TRUSTEE'S OBJECTION TO MOTION TO ALLOW ADMINISTRATIVE CLAIM and (3) UNITED STATES TRUSTEE'S OBJECTION TO MOTION TO ALLOW ADMINISTRATIVE CLAIM

G. HARVEY BOSWELL, Bankruptcy Judge.

The Court conducted a hearing on the debtors' "Motion to Allow Administrative Claim" and the objections thereto on September 28, 2005. FED. R. BANKR. P. 9014. Resolution of this matter is a core proceeding. 28 U.S.C. § 157(b)(2). The Court has reviewed the testimony from the hearing and the record as a whole. This Memorandum Opinion and Order shall serve as the Court's findings of facts and conclusions of law. FED. R. BANKR. P. 7052.

## I. FINDINGS OF FACT

The debtors in this case filed their no asset chapter 7 case on June 18, 1999.[1] The debtors listed liabilities of $1,293,698.41 on their petition. The Court granted their chapter 7 discharge on September 30, 1999. Throughout the pendency of the case, Jerome Teel, ("Teel"), was the attorney for the debtors. He was never employed by the trustee under 11 U.S.C. § 327.

Approximately one month after receiving their discharge, the debtors contacted an attorney in Memphis regarding their perceived mistreatment by "political state people" in the operation of their businesses. The debtors were eventually referred to J. Houston Gordon, ("Gordon"), who agreed to pursue a lawsuit against the alleged wrong-doers. Ted Hunderup, the original chapter 7 trustee, filed an application to employ Gordon on December 28, 1999. The Court approved that application on January 20, 2000.

On May 17, 2000, the trustee filed three separate complaints to compel turnover against Benny Fesmire, Craig Laman, William Wilhite, William H. Shackelford, Jr. a/k/a Hank Shackelford, W.F.L., LLC,

---

1. On the same day the debtors filed their individual chapter 7 petition, they also filed chapter 7 petitions for their businesses, Southern Industrial Mechanical Maintenance, Corp., case number 99–11907, and Simmco

LPG Tanks, Inc., case number 99–11908. Pursuant to an order entered on May 20, 2005, the three cases were consolidated into the instant case, case number 99–11909.

and F.W.L., LLC.[2] Gordon represented the trustee in these matters and the debtors participated extensively in the prosecution of these lawsuits. According to Gordon's testimony, "there wouldn't have been a case without their help."

On August 22, 2001, Marianna Williams was appointed the successor trustee in the case. The adversary complaints proceeded through the pre-trial process for almost four years until the matters were settled in June 2005. According to the trustee's "Motion for Compromise and Settlement," filed on June 28, 2005, the settlement between the parties was to be a confidential one, but the trustee did disclose that there would be no surplus for the debtors. The Court granted the trustee's motion on August 1, 2005.

On August 22, 2005, the debtors filed a "Motion to Allow Administrative Expenses" in which they sought payment of an administrative claim of $200,000.00 under § 503(b). Both the chapter 7 trustee and the U.S. Trustee filed objections to this motion. At the hearing in this matter, counsel for the debtors orally amended the total amount the debtors were seeking to $115,868.72. This total was composed of four separate parts. First, the debtors alleged they were entitled to payment of their attorneys fees in the amount of $37,736.62. This figure was the amount Teel charged the debtors for his representation of them throughout prosecution of the adversary proceedings.

The second portion of the debtors' administrative expense claim was $6,600.00. This figure represented the amount the debtors paid an appraiser to value some of the property at issue in the adversary proceedings. The trustee used these appraisals in prosecution of those complaints. At the hearing on the debtor's motion, the trustee stated that she did not have an objection to paying that amount as an administrative expense.

The third amount the debtors alleged they were entitled to as an administrative expense was $2,514.60 for mileage. The debtors arrived at this amount by figuring the amount of miles they drove throughout the pendency of the case and then multiplying that number by $.36/mile. According to the "Travel Expenses" worksheet, trial exhibit 3, the Blurtons included any mileage they incurred in driving to Teel's office, Gordon's office, court hearings, meetings with attorneys and/or trustees, and travel to Brownsville "to investigate equipment removal."

The fourth and final portion of the debtors' administrative expense claim was $69,017.50. The debtors labeled this amount as "administrative hours" and it was composed of the personal time both debtors spent on the case. The debtors calculated this amount by charging $75.00 for each of the 991.70 hours they spent working on the case. According to the debtors' testimony, $75.00/hour is the modest rate they would charge their clients for their services as mechanical contractors. The debtors submitted time sheets to the Court, trial exhibit 2, which detailed the following activities as "administrative" time: (1) office conferences and phone calls with Teel, (2) meetings with attorneys, (3) writing letters to the attorneys detailing the history of what had happened between them and the defendants, (4) attending court, (5) pulling, organizing and reviewing files, (6) labeling boxes of paperwork, (7) attending depositions, (8) reviewing statements, and (9) discussing the case between themselves.

**2.** The trustee filed a complaint against the defendants in each of the debtors' chapter 7 cases, case no. 99–11907, 99–11908, and 99–11909.

## II.  CONCLUSIONS OF LAW

■■■  Section 503(b) of the Bankruptcy Code provides that:

> (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including–
>
>> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

11 U.S.C. § 503(b).  Claims for administrative expenses under § 503(b) are to be strictly construed.  *City of White Plains New York v. A & S Galleria Real Estate, Inc., (In re Federated Dept. Stores, Inc.),* 270 F.3d 994, 1000 (6th Cir.2001).  This strict construction is required because the payment of administrative expenses "reduce[s] the funds available for creditors and other claimants."  *Id.*  A court has broad discretion to grant a request for an administrative expense; however "that discretion is limited by the requirement of § 503(b)(1)(A) that only actual and necessary costs of preserving the estate receive priority."  *In re H & S Transportation Co., Inc.,* 115 B.R. 592, 599 (M.D.Tenn. 1990).  "The Sixth Circuit normally utilizes what has become known as the 'benefit to the estate test' in order to determine what qualifies as an 'actual, necessary' administrative expense."  *Beneke Co., Inc., v. Econ. Lodging Sys., Inc. (In re Econ. Lodging Sys., Inc.),* 234 B.R. 691, 697 (6th Cir. BAP 1999).  Pursuant to this test, a party seeking an administrative expense must prove that the debt " '(1) arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate.' "  *Id.* (citing *Pension Benefit Guar. Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.),* 126 F.3d 811, 816 (6th Cir.1997)).

### A.  Attorney's fee

In their "Motion to Allow Administrative Claim," the debtors have alleged that they are entitled to be reimbursed the attorney fees they owe their attorney, Jerome Teel, as an administrative expense under § 503(b)(1)(A).  The debtors owe Teel a total of $37,736.62 for his representation of them in the bankruptcy case.  Although Teel was the debtors' attorney, he was never employed by the trustee pursuant to 11 U.S.C. § 327.

■■■  In the case of *Lamie v. United States Trustee,* 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024, (2004), the United States Supreme Court held that "§ 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds unless they are employed as authorized by § 327.  If the attorney is to be paid from estate funds under § 330(a)(1) in a chapter 7 case, he must be employed by the trustee and approved by the court."  *Lamie,* 540 U.S. at 538–39, 124 S.Ct. 1023.  In the case at bar, Teel has alleged that the Supreme Court's holding in *Lamie* does not apply to this case because he is not seeking to be paid his fees under § 330.  Instead, the debtors are seeking reimbursement of his fees under § 503.  The Court finds this argument without merit for two reasons.

First, the *Lamie* Court clearly stated that although its holding appeared to be a strict one, it did not foreclose the possibility of a debtor's attorney receiving fees in a chapter 7 case:

> Compensation for debtors' attorneys working on chapter 7 bankruptcies, moreover, is not altogether prohibited.  Sections 327 and 330, taken together, allow chapter 7 trustees to engage attorneys, including debtors' counsel and allow courts to award them fees.  See §§ 327(a) and (e).  Section 327's limitation on debtors' incurring debts for pro-

fessional services without the chapter 7 trustee's approval is not absurd. In the context of a chapter 7 liquidation it advances the trustee's responsibility for preserving the estate.

*Lamie*, 124 S.Ct. at 1031–32. In addition to this reasoning, the *Lamie* Court also discussed the methods for chapter 12 and 13 debtors' attorneys to receive their fees. Nowhere in its decision did the Supreme Court mention the possibility of payment of attorneys fees under § 503(b)(1). Surely if that were an available avenue, the Court would have addressed it in its discussion of the issue.

In analyzing the *Lamie* decision, this Court finds that the Supreme Court's reasoning is clear. A trustee has a statutory duty to preserve the estate and make the largest possible disbursement to a debtor's creditors. One of the ways in which the trustee carries out this duty is by monitoring and controlling how the estate's funds are spent. Limiting a debtor's attorney to payment of fees only if he is employed under § 327 is the most effective way for the trustee to carry out this duty in relation to payment for professional services. Allowing a debtor or an attorney to circumvent the Supreme Court's ruling by simply filing a request for payment of the fees under § 503(b)(1) would amount to quashing the trustee's opportunity to preserve the estate.

The second reason the Court finds that the debtors' argument regarding attorneys fees is without merit is because the language of 503(b) itself precludes the payment of fees to debtors' attorneys who are not employed under § 327. Subsection (1)(A) of § 503(b) states there will be allowed an administrative expense claim for "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;" § 503(b)(1)(A). Applying the "benefit to the estate" test to this case, it is clear that Teel's attorneys fees do not qualify as an administrative expense.

The debt the debtors owe to Teel for his representation did not arise from a transaction with the bankruptcy estate. Pursuant to § 541(a) of the Bankruptcy Code, all legal or equitable interests the debtor has in property at the time the case is filed become property of the estate. 11 U.S.C. § 541(a)(1). Property of the estate includes "causes of action." *Gochenour v. Cleveland Terminals Bldg., Co.*, 118 F.2d 89, 93 (6th Cir.1941). The right to pursue causes of action belonging to the debtor at the time the case is filed vest in the trustee for the benefit of the estate. *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (1988); *In re Van Dresser Corp.*, 128 F.3d 945, 947 (6th Cir.1997). At all times, the lawsuit in this matter belonged to the estate. The trustee had total control over the proceedings and employed Gordon to represent both herself and the estate. Teel represented the debtors only and although his services may have benefitted the debtors, there is no proof that Teel's services benefitted the estate.

**B. Debtors' "Administrative Hours," Mileage Reimbursement and Appraisals**

Section 521(a)(3) and (4) of the Bankruptcy Code provide that the "debtor shall"

(3) if a trustee is serving in the case, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title;

(4) if a trustee is serving in the case, surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to the property of

the estate, whether or not immunity is granted under section 344 of this title; 11 U.S.C. § 521(a)(3) and (4). There is no question that the debtors in this case fully and sufficiently satisfied their statutory obligation to cooperate with the trustee and trustee's counsel in prosecution of the adversary proceedings. In fact, the trustee's attorney testified at the hearing in this matter that without the Blurtons' help, there would have been no case. The Blurtons' assistance in reviewing and explaining the files and documents was absolutely essential to going forward with the case.

The trustee proposed two basic arguments in opposing the debtors' motion. First, the trustee argued that because the debtors have a statutory obligation to cooperate with the trustee, they cannot be paid an administrative expense for the time they invested in the case. Secondly, the trustee argued that if the Court were to grant an administrative expense to these debtors for their time, it may result in a slippery slope on which debtors who assist in the sale of a trailer would seek administrative expenses in the future. The Court finds both of these arguments well intentioned; however, based on the Court's discretion in § 503(b) matters, the Court overrules both of the trustee's objections.

The Court fully understands the statutory obligations debtors are saddled with in bankruptcy. The Court is also aware that failure to fulfill these obligations can result in dismissal of a case or denial of a discharge. But the Court finds that debtors who invest over 900 hours in helping the trustee recover assets for the estate have certainly gone above and beyond the duties imposed by the Bankruptcy Code, especially when the trustee's own attorney testified that without the debtors' help, the trustee would not have been able to proceed with the lawsuit. The Court also finds that there is a clear and distinct difference between debtors who spend close to 1000 hours working on a case and debtors who spend 10 hours assisting the trustee in selling their home.

Analyzing the debtors' assistance in the prosecution of the adversary complaints under the Sixth Circuit's "benefit to the estate test," the Court finds that the debtors did indeed work with the bankruptcy estate and that the work they did directly and substantially benefitted that estate. Clearly, the entire amount of the money the Blurtons paid for the appraisals of the property can be payed as an administrative expense. As for the mileage and "administrative hours," the Court finds that the debtors are not entitled to the full amount they have requested for those two items. Instead, the Court finds that the debtors should be allowed an administrative expense in the amount of $25,000.00 for the assistance they provided to the trustee and trustee's counsel in prosecution of the adversary proceedings.

### III. ORDER

It is therefore **ORDERED** that the Debtors' Motion is **DENIED IN PART** and **GRANTED IN PART AS FOLLOWS:**

(1) the debtors' request for payment of their attorneys' fees in the amount of $37,736.62 is **DENIED;**

(2) the debtors' request for payment of $6,600.00 for appraisals is **GRANTED;**

(3) the debtors' request for payment of mileage reimbursement and administrative time is **GRANTED IN THE AMOUNT OF $25,000.00.**

**IT IS SO ORDERED.**